*B. & A. Monroe* for plaintiffs.

---

CHANCERY.

## Carey *vs* Callan's Executor, &c.

*Case* 13.

ERROR TO THE LOUISVILLE CHANCERY COURT.

*Trusts. Evidence. Will case. Instructions.*

*Sept.* 23.

JUDGE MARSHALL delivered the opinion of the Court.

case stated.

IF the sole object of this bill had been to establish a resulting trust in the estate of John Callan, deceased, in favor of the complainants, his sisters, on the ground that he had expended in its acquisition, some amount of money derived from the estate of their common father, and that he had been aided in preserving and increasing it by the labor and care of his sisters, we should be of opinion, that upon the pleadings and proofs, the complainants had failed in making out a case for relief. The main fact on which the claim is founded, viz: the receipt of

funds from the father, thirty or forty years ago, rests upon no other evidence, but the statements of some three or four winesses, professing to detail, in general terms, the declarations or admissions of John Callan; declarations not entirely consistent in themselves, directly contradicted by other declarations of his also admitted in evidence, and uncorroborated by any circumstance in the cause. While, on the other hand, the fact that no body proves that the father had any property or money, or piofitable occupation, but it is abundantly shown, that John Callan had a good trade, which he carried on industriously and extensively; that he took his parents and sisters into his house, and that from time to time he purchased lots in Louisville, the appreciation of which made him rich, tend sufficiently to account for the acquisition of his fortune by his own industry and good management, and to exclude any inference of its having been founded upon means derived from his father. Besides, if his sisters were entitled to a share of his acquisitions, why did they 'not assert their right in a Court of Justice, before his death ? If at one time they had reason to suppose he would leave his property to them at his death, still they might have had to wait long for that event, and might have died before him. But even this expectation must have been weakened and destroyed by his marriage, and by the alienation of feeling, which for years before his death, had existed on his part towards them, and which increasing with the lapse of time, was accompanied by repeated declarations that he would not give his property to them.

If after so great a lapse of time, the trust now claimed could have been established by parol, it could only have been by clear and explicit evidence of the facts from which it was supposed to result. And in this the complainants have wholly failed. The evidence amounts to nothing towards divesting a title evidenced by solemn deeds and records, and enjoyed without disturbance for a long series of years.

Parol proof to establish a resulting trust, after great lapse of time, should be clear and explicit.

2. But the bill was filed especially, if not exclusively, for the purpose of contesting the validity of the will of John Callan, under the 11th section of the act relating to the

CAREY
*vs*
CALLAN'S EX'R.
&c.

execution and probate of wills. And it is contended, that upon the issue of will or no will, which was properly submitted to the jury, in the general terms of an issue of *devisavit vel non*, the evidence relating to the manner in which the testator acquired the funds with which he purchased his property, should have been left to the jury, and that the Chancellor erred in excluding it. But if, as already said, the evidence on this subject was wholly insufficient to affect the title with a trust, if under all this evidence, the property belonged, in law and equity, to John Callan, he had a perfect right to dispose of it as he pleased, and what bearing should such evidence have had on the issue, whether the paper before the jury was his will or not? It might indeed have perplexed and disturbed their minds, and withdrawn them from the proper issue, but how could it elucidate the question before them?

A devisee of land held in trust, hold subject to the trust.

If the evidence established the trust beyond a doubt, the consequence would be, not that the will should not be established in the course of probate, but that the devisees would, in a Court of Equity, be held bound by the trust, as the testator had been. As certain and satisfactory evidence of the facts from which the trust would result, ought not to affect the question of probate, it would seem *a fortiori* that it ought not to be affected by uncertain and doubtful evidence of the same facts. It may be said that one of charges being, that the will was procured by the fraud, flattery and undue influence and importunity of the principal devisees, to the partial disherison of the testator's brother and sisters, it is materal and admissible to show the obligations and duty which he owed to these near relations, as laying a foundation for the inference that the will being in violation of this duty, was improperly procured. But if the natural duty arising out of the relation itself is not sufficient to establish this inference, and to dispense with satisfactory proof of undue means actually taken to procure its violation, how much force will be added to this inference by doubtful and inconsistent evidence respecting some supposed moral obligation, in addition to the natural duty referred to; and how much weaker may the proof be of the use of sinister means, in order to establish the inference that the will

was procured by such means?   If the jury are to decide

these questions ; if upon doubtful evidence, and against the weight of evidence, they may determine that such additional obligation existed, and has been violated by the will, and may thence infer that the party benefitted has used undue and sinister means to procure the will, and on that ground find against it, the result will probably be, that the issue of will or no will, will be tested not by the question, whether a competent testator has disposed of his estate according to his own free will and judgment, and under his own sense of duty and obligation, but whether the disposition corresponds with the standard of duty which the jury may, upon the evidence, and accoiding to their own sense of justice, erect for him.

The fact, if positively proved that Callan had received and used some money of his father, being taken as adding something to the obligations of natural duty in behalf of his sisters, might facilitate the belief, that a will which violated these obligations had been obtained by undue means, and thus lessen the burthen of more direct proof necessary to establish the use of such means.   But as any legitimate effect to which the fact itself might be entitled would be exceedingly slight and scarcely appreciable, while its actual influence on the minds of the jury might be such as almost to dispense with more direct proof of undue means used in procuring the will, we should hesitate to pronounce the exclusion of the fact itself from the jury, a sufficient ground for reversing the decree, even if there were other proof going directly to establish the use of improper means in obtaining the will, unless upon such other proof, the question as to undue means might rationally be decided against the will.   But here not only is the fact itself of the use of the father's money not distinctly proved, but the weight of the evidence is against it.   And with or without that evidence, there is not, in our judgment, any sufficient ground for coming to the conclusion that the will was procured by undue means, and it cannot be presumed, that upon the whole evidence, a different verdict would have been, or would hereafter be rendered in the cause.   Besides, no objection or exception seems to have been made to the exclusion at the

time, and there was no motion for a new trial. Under these circumstances, if it were conceded that the fact of the testator's having received and used his father's money, &c. was material and admissible, we should not feel authorized to reverse the decree, and direct a new trial, because the Chancellor excluded evidence relating to that fact, weak in its nature, uncertain in its tendency, and which being wholly insufficient to establish the fact, for the purpose of raising a trust, was of doubtful competency in the question of probate.

3. It is further objected, that the Chancellor erred in undertaking to instruct the jury when he was not asked to do so, and also in the instructions as given. We are of opinion, however, that as the Court is properly the judge of the law, as the jury is of the fact; and as the verdict must conform to the law, the mere fact that the Court, abstaining from all comment on the evidence, has volunteered to expound the law to the jury, in a complicated case, constitutes in itself no ground of reversal, nor of just complaint. The instructions thus given, are to be considered upon their own merits, as compared with, and applicable to the evidence, and should not be deemed a cause of reversal, unless on the ground of some error in them, which may be supposed to have infected the verdict. The specific objection to these instructions, is that they present too narrow a view of the ground on which a will may be impeached as having been procured by fraud or undue influence. We are inclined to the opinion, that upon a strict analysis of the instructions, they may be subject to this criticism ; and if there were any evidence, from which the jury might have rationally concluded that fraud or undue influence had been used in procuring the will, and it could be assumed that the jury were, or might have been misled by the instruction, a new trial might have been directed, though the verdict accorded with the weight of the evidence. But, as already intimated, we are of opinion that the evidence would not authorize a verdict finding that fraud or other undue means charged in the bill, had been used by the principal devisees, or any others for them. And as the jury must have found the same verdict without the instruc-

That the Chancellor on the trial of an issue before the jury, of will or no will, voluntarily instructed the jury upon the law of the case, constitutes no just ground of complaint or ground of reversal, unless the instructions were erroneous.

tions, we cannot suppose that they were misled by any inference which might be drawn from a nice criticism of the instructions given. Nor indeed can it be assumed as certain, that they received an erroneous impression of the law, since the instructions allow of an interpretation which admits that any sinister influence in the procurement of the will in question, used by the principal devisees, would be sufficient to invalidate it. And such, taking the instruction altogether, is perhaps the most obvious inference, and the one which the jury assumed. We should not reverse a verdict which is right upon the evidence, because an instruction which as probably understood by the jury was right, may upon critical analysis, appear to be wrong. And here again we refer to the fact that no exceptions were taken to the instructions at the time, and no new trial moved for.

4. But it is further objected, that the decree dismissing the bill, was precipitately rendered upon the verdict, without allowing time for motion, &c. But certainly in the absence of special circumstances, the interval of four days, must be deemed amply sufficient; and indeed grounds for opening the decree, and having a new trial, might, for all that appears, have been afterwards presented. But no step of the kind seems to have been taken in the Court below.

5. It is also contended, that the order submitting the issue to the jury, was erroneous, because it restricted the evidence to the depositions in the cause. This restriction seems to be implied in the terms of the order; and it is contrary to the general, and as we think, the correct practice in trials under the bill in chancery for contesting the validity of a will. But the cause seems to have been prepared on both sides, with a view to a trial by depositions. No objection was made to the order when made, and there was no offer to introduce witnesses before the jury. This objection must therefore be deemed unavailing.

6. With regard to the prayer for general relief, under which it is contended, that upon failing to invalidate the will by the verdict, the complainants should have had a decree, either establishing the trust, or at least directing.

CAREY
vs
CALLAN'S EX'R.
&c.

Though instructions by the Court may be subject to doubt as to their correctness in point of law, yet if the verdict is right and they were not calculated to mislead, there should be no reversal, especially as the instructions were not excepted to when given, nor new trial asked.—

—Upon the trial of an issue of will or no will, it is not a ground for reversal that the Chancellor confined the parties to the proof by depositions in the cause, when no objection to that instruction was made at the time.

payment of the legacy of $100 a year, given to one of them, we observe that it may be seriously doubted whether, on a bill filed specially for contesting the validity of a will, any other inconsistent matter mixed up with that, should be made the ground of relief, under the general prayer, after a failure as to the relief expressly sought. But waiving this view, the question as to the trust has been already disposed of, and with regard to the legacy, there is no allegation that it is not regularly paid.

7. On the subject of the alledged revocation of the will, we need only remark, that even if the deed providing for the testator's wife, the same annuity of $500, as is given her by the will previously written, should be deemed a revocation *pro tanto*, this fact would not affect the question of probate, and is no ground of relief to the complainants; since such revocation would inure not to their benefit as heirs, but to the benefit of the residuary devisees. There is no pretence of a revocation, which could, under the statute, defeat the probate of the will, nor is there any plausible ground for alledging insanity. On these points the instructions were correct.

Wherefore, the decree dismissing the bill is affirmed.

*Duncan and Ripley* for plaintiffs.

*A party has no right to assign that for error by which he is not prejudiced.*