## Manny and another vs. Glendinning and another.

In a contract of sale of a reaper, with warranty that it would do good work, a condition that if it *did* not do good work it might be returned, is the same in effect as a condition that if it *would* not do good work it might be returned.

Although an erroneous instruction was given on a trial, if the appellate court can see clearly from the whole record that the verdict and judgment are right and could not properly have been different, it will not reverse the judgment.

Where an article is sold with a condition that it may be returned if it do not correspond with a warranty, a return of the article to the vendor, and his unconditional acceptance of it, puts an end to the contract, and the vendor cannot maintain an action for the price, although he can show that there was no breach of the warranty.

It might be otherwise, if the vendor had accepted the article conditionally, reserving his right to insist on the contract if the article was in fact such as warranted; or if the vendor was induced to accept its return by fraudulent representations of the vendee as to its quality.

Where a note is given to a firm and is indorsed by it to persons who were members of the firm at the date of the note, the indorsees do not stand in the position of *bona fide* holders for value, and the note is subject to any defense which might have been made against it in the hands of the payees.

APPEAL from the Circuit Court for *La Fayette* County.

Action on a negotiable note given by the respondents to Manny, Blinn & Co., in part payment for a reaper, and indorsed by the payees, before due, to *Manny* and *Blinn*, who were members of the firm at the date of the note. The defense was a breach of warranty, and that the reaper had been returned to the vendors and accepted by them. Several witnesses testified that the reaper was warranted to do good work, and one of them testified that the agent who made the sale told the purchasers "that they might take the reaper home and try it, and if it *would not* do good work they could bring it right back;" others testified that the agent told the purchasers that they should take the reaper home and try it, "and if it *did* not do good work, they

should bring it right back, or right straight back." The reaper was bought on the 2d of July; was tried in grass the next day, and on the 11th, as soon as wheat was ripe enough to cut, was tried in wheat; and on the next day was returned to the agent of the vendors. One of the respondents testified that he delivered the reaper to the agent; that the agent helped take it off the wagon, took the tool box and put in the nuts, bolts and screws, and nailed or locked it up and carried it into his house, and that on being asked to give back the notes he had taken for the price, he said he would send to Rockford and get them. The agent testified that when the respondents brought the reaper back, they said it would not work at all; that it could not be made to cut over three feet in width; that the tongue was put in wrong; that the reach was wrong, and the hole for the coupling bolt bored wrong; and that it could not be made to cut a full swath unless the horses walked in the grain; and that he allowed them to leave the reaper upon their representation that it was defective and would not work right. Evidence was given on both sides to show the quality and capacity of the machine.

The court charged the jury, among other things, that if the contract was that the defendants might return the machine if it *did* not do good work, then if they used ordinary care in putting it together and working it, and it *did* not do good work, and they returned it, the defense was made out; but that if the contract was that the machine would do good work, and that if it *would not*, the defendants might return it, then the defendants were bound to use all the skill in putting the machine together and working it, that was necessary to test it and ascertain whether it was defective so that it *would not* work, before they had a right to return it.

The plaintiffs asked the court to instruct the jury that if they found that the reaper was a perfectly made machine and would do good work, as represented by their agent at the time of sale, the defendants had no right to return it, and the verdict must be for the plaintiffs notwithstanding its return; and also that if their agent warranted the reaper to do good work, and that if it would not the defendants might

return it, then if the reaper was made of good material and the workmanship was perfect, and if, when properly put together and properly managed and worked, it would work as warranted, the verdict must be for the plaintiffs.

The court told the jury that the instructions asked were the law, provided the contract was that if the machine *would not* do good work, it might be returned; but it was for them to say whether that was the contract, or whether it was that if it *did* not do good work, it might be returned.

Verdict for defendants.

*Williams & Blackstone* and *J. H. Knowlton*, for appellants.

*C. L. G. Blessing*, for respondent, contended that the return of the reaper, and its unconditional acceptance by the vendors, put an end to the contract. 12 Wheat., 193; *Williams vs. Hurt*, 2 Humph., 68; *Kase vs. John*, 10 Watts, 107; *Adam vs. Richards*, 2 H. Black., 573.

Dec. 11, 1861.  *By the Court*, PAINE, J. The instructions of the court below to the jury, are obnoxious to the criticism pronounced on them by the counsel for the appellants. They clearly imply that the rights of the plaintiffs, and the duties of the defendants, would be different, if the language used in making the contract was, that "if the reaper *did* not do good work, it might be returned," from what they would have been, if the language was, that "if it *would* not do good work, it might be returned." We think no such difference exists, but that the substantial meaning of the contract, in either form, was, that the vendor warranted that the reaper when properly put together and managed, would work as stated, and that if it did not, or would not, which is the same thing, it might be returned. These instructions, therefore, which imply that if the word "*did*" was used, the plaintiffs could not recover upon the same proofs which would entitle them to recover if the word "*would*" was used, would in volve a reversal of the judgment, if it did not clearly appear, as we think it does from the whole case, that the verdict and judgment are right, and that the jury, under proper instructions, must necessarily have found the same verdict. Whichever form of expression was used, the purchasers had the

right to return the machine. They did return it, and the plaintiffs, by their agents, accepted it unconditionally. There is no conflict in the evidence upon this point. It fully ap- pears as well from the testimony of the agent, as from that of the defendants. The instructions asked by the plaintiffs' counsel, assume it as a fact. If the question, therefore, had been submitted to the jury, they could only have found that the reaper had been returned and accepted by the plaintiffs. This put an end to the contract. It was rescinded by the consent of both parties. It is true that if the plaintiffs had not accepted the reaper when returned, or perhaps if they had accepted conditionally, reserving their right to insist on the contract in case it was in fact such a machine as warranted, then their right to recover would depend upon the question whether it really was so or not. But if they take the property back without condition, that puts an end to the contract by their own consent, and they can no longer recover, even though they could show that the property really answered the warranty. 2 Story on Contracts, § 848, a; *Towers vs. Barrett*, 1 Term Rep., 136.

This being so, and there being no conflict in the evidence, so that the jury must have found against the plaintiffs upon this point, the error in the instructions ought not to reverse the judgment. Notwithstanding errors occur on the trial, still if the appellate court can see clearly from the whole record that the verdict and judgment are right and could not properly have been otherwise, it will not reverse the judgment. *Hooker vs. The State*, 7 Blackf., 272; *Casteel vs. Casteel*, 8 id., 240; *Carey vs. Callan's Ex'r*, 6 B. Mon., 48; *Routh vs. Bank*, 12 S. & M., 190; *Lobb vs. Lobb*, 26 Penn. St., 331; *Morris vs. Runnells*, 12 Texas, 178.

The circuit court was clearly right in holding that the plaintiffs did not stand in the position of *bona fide* holders for value, so that any defense existing on the contract as against the original firm could not be set up against them. They were themselves members of the original firm and parties to the contract, and it would be a strange application of the rule protecting *bona fide* purchasers of negotiable paper, to say that a part of the vendors of an article with warranty,

January Term,
1862.

MANNY et al.
v.
GLENDINNING
et al.

March 15.

might buy the interest of the other vendors in the negotiable paper given in payment, and then enforce its collection, free from any legitimate defense on the contract.

The judgment is affirmed, with costs.

A motion for a rehearing was disposed of as follows:

*By the Court*, PAINE, J. A motion for a rehearing was made in this case, and it was argued that although the law be as stated in the opinion already filed, still if the agent of the plaintiffs accepted the property back, in consequence of the false and fraudulent representations of the defendants as to the manner in which it worked, such fraud would avoid the effect of the acceptance, and the plaintiffs might still insist on the contract.

We think this is so, and if there were any evidence upon which a jury might properly have found fraud in the defendants, we should feel bound to reverse the judgment, and order a new trial. But we can discover no such evidence. There was some conflict in the evidence, it is true, as to the actual capacity of the machine. But there was nothing tending to show that the defendants did not try it according to the best of their ability, or that they did not believe the representations they made as to its mode of working. This being so, we still think the doctrine of the opinion already filed, applicable to the case, and that there was no evidence which would have warranted a different verdict. The fact that it might be possible on another trial, to show the representations to have been fraudulently made, is no reason for changing the decision. It might be said of every verdict, that if a new trial were had, different facts might be proved, which would change the law applicable to the case. But that abstract possibility is not a sufficient reason for ordering a new trial, so long as there is nothing before the court tending to show that such different facts exist.

The motion is denied, with costs.