THOMAS W. D. REYNOLDS, Admr., *vs.* HATTIE E. BLAISDELL.

PROVIDENCE—MAY 17, 1901.

PRESENT : Stiness, C. J., Tillinghast and Douglas, JJ.

(1) *Equity. Resulting Trusts.*

To establish a resulting trust depends upon the proof of two facts, viz.: that the consideration paid for the conveyance to the nominal purchaser was the property of the claimant; and that the claimant, while permitting the conveyance of the legal title to the nominal purchaser, intended to retain the beneficial interest.

(2) *Resulting Trusts. Burden of Proof.*

In an attempt to establish a resulting trust, the burden of proof is upon the claimant. The evidence offered must also be full, clear, and satisfactory ; and, under the practice in this State, where the answer is not under oath, the sworn deposition of the nominal owner should require a considerable weight of evidence to overcome its effect.

(3) *Resulting Trusts.*

Where the grantee of an estate has paid a portion of the purchase-money, a resulting trust will not attach to the estate in favor of the party who has contributed the residue of the consideration.

BILL IN EQUITY to establish a resulting trust. The facts are fully stated in the opinion. Heard on bill, answer, and proof. Bill dismissed.

DOUGLAS, J.   The complainant brings this bill as administrator of the estate of James W. Braman, who died May 9, 1899, alleging that the defendant, who was the granddaughter of said intestate, held certain property as trustee for said Braman in his life-time, and now holds the same and the proceeds thereof as trustee for his estate, and prays that she may be ordered to account for and transfer and pay over such property to the complainant.

The bill, as amended, specifically alleges that Braman made loans of money to various persons, taking the security in the name of the respondent, as follows :

> (*a*)  A loan of $300 to Joseph Cheatham, secured by mortgage on lot No. 56 on Camp White estate in East Providence.
>
> (*b*)  A loan of $300 to Joseph Cheatham, secured by mortgage of a house on lot No. 50 on plat of Camp White estate.
>
> (*c*)  A loan of $250 to James B. and Madeline Munroe, secured by mortgage on lots Nos. 49 and 49½ on the John W. Babcock plat in the town of Cranston.
>
> (*d*)  A loan of $1,020 to Albert C. Greene, secured by mortgage on lot No. 10 on John D. Cranston plat in Providence.
>
> (*e*)  A loan of $250 to A. B. Rounds, secured by mortgage of W. C. Burton on personal property.
>
> (*f*)  A loan of $161, secured by mortgage of personal property of Thomas Chatham.
>
> (*g*)  A loan of $1,500 to W. H. Richmond, secured by mortgage on lot No. 409 on the Miller & Ellerbeck plat, Providence.
>
> (*h*)  A loan of $1,200 to Elcy D. Lynch, secured by mortgage on land in East Providence, book 19, page 471.
>
> (*i*)  A loan of $400 to Elcy D. Lynch, secured by mortgage on land in East Providence, book 21, page 189.

Also that Braman was the owner of certain real estate, the

title to which was held by the respondent as trustee for said Braman, as follows:

> Lot 24 and lot 29 on the Plain Farm plat in Cranston, conveyed by T. W. Reynolds to the respondent.
>
> Also, lots Nos. 353, 361, 362, and 372 on assessors' plat No. 10, in Pawtucket.
>
> Also, lots Nos. 11, 12, and 13 on the River View plat in East Providence.

The bill does not allege in what manner the respondent became trustee of the real estate referred to, nor whether the trust were express or constructive, or what were its terms.

The answer denies that Braman had any interest in the loans and mortgage and real estate aforesaid, and claims them as the respondent's own property.

With respect to the Lynch loan of $1,200, it alleges that the sum secured consisted partly of money of the respondent and partly from a debt due from John S. Lynch to Braman, which he gave the respondent as a present.

The complainant having joined issue upon the allegations of the answer, three issues of facts arise in the case, which are stated by the parties as follows:

1. Did the money loaned upon the mortgages mentioned in paragraph five of the bill of complaint belong to James W. Braman?

2. Did the real estate mentioned in paragraph six of the bill of complaint belong to James W. Braman at the time title to the same was taken in the name of Hattie E. Blaisdell?

3. Has any money belonging to James W. Braman come into the possession of Hattie E. Blaisdell since the death of James W. Braman?

(1) In considering the evidence upon these issues it must be borne in mind that a resulting trust of the character here sought to be established depends upon the proof of two facts: First, that the money or consideration paid for the conveyance to the nominal purchaser was the money or property of the claimant; and, secondly, that the claimant, while directing or permitting the conveyance of the legal title to

the nominal purchaser, intended to retain the beneficial inter-est in himself.

In determining the question of intention, the courts are aided by certain well-established presumptions. Thus, if the consideration moves from a parent or one who stands *in loco parentis* to the nominal purchaser, the purchase-money or the estate purchased is presumed to be a gift; if the parties concerned are strangers in blood to each other, a trust is pre-sumed to be intended. These presumptions, however, are not conclusive, but may be overthrown by clear and convincing evidence. *Hudson* v. *White*, 17 R. I. 519–522; Hill on Trus-tees, 156–165, *et seq.;* Lewin on Trusts, 222 and 225, the latter quoting Chief Baron Eyre in *Dyer* v. *Dyer*, 2 Cox, 94.

(2)    Upon the question of ownership of the purchase-money or origin of the consideration, the burden of proof is upon the complainant. It is said in 15 Am. & Eng. Ency. Law, 2 ed. 1174, as a statement of the principles gathered from many cases cited: "As the person who undertakes to establish a resulting trust by parol evidence claims an estate not only without deed, but in opposition to the written title, and as records and deeds are not to be easily overthrown, it is a well-stated rule not only that the burden of proof to prove the payment of the purchase-money is upon him, but also that the evidence introduced in support of his claim must be clear, full, and satisfactory, and this is especially true when there has been great delay in asserting the claim. It has been held that by the terms 'clearness and certainty,' as ap-plied to the degree of proof required, was meant generally that there must be sufficient positive facts proved to take the matter out of the realm of conjecture and presumption."

In 1 Lewin on Trusts, page 231, we find: "Parol evidence where admitted must prove the fact very clearly;" and on page 232, "Should the nominal purchaser deny the trust by his answer, the solemnity of the defendant's oath will of course require a considerable weight of evidence to overcome his impression." Under our practice, where the answer, not being sworn to, has the effect of a plea only, the sworn depo-sition of the nominal owner should be given the same effect.

Hill on Trustees, page 152, says : "For this purpose the payment of the money must be clearly proved, and this may be done by any evidence going directly to the fact of payment. . . . In every case the evidence adduced must be such as goes distinctly to the fact of payment," and, page 155, "It is to be observed that where the evidence is merely parol it will be received with great caution, and the court will look anxiously for some corroborating circumstances in support of it," citing *Lench* v. *Lench*, 10 Ves. 517–18.    *Carey* v. *Callan*, 6 B. Mon. 44.

The testimony adduced by the complainant in respect to the mortgages does not, in our opinion, satisfy the requirements of the law.    At best it gives rise only to a suspicion, or conjecture, that the money belonged to the intestate.

One witness only, John S. Lynch, testifies directly to the fact, and his evidence is uncertain, vague, and unsatisfactory.    In cross-examination he admits that all he knows about it is what he was told by the intestate.    He does not even say that the declarations of the intestate were made at the time of the transactions.    His testimony with respect to the payment of the money is directly contradicted in every case by the person to whom the money was paid, and these persons apparently are entirely disinterested and credible witnesses. (3) It also appears in every instance, by trustworthy testimony, that, at the time of the loans, the intestate declared that he was acting for his granddaughter and that it was her own money that she was advancing.    One of the loans to Elcy D. Lynch, the respondent says, consisted of a debt due from the witness Lynch to the intestate.    Lynch himself admits that the mortgage was given partly on the consideration of wages which he owed to the intestate.

In such a case it is well settled that no resulting trust attaches to the estate of the nominal owner.    *O'Donnell* v. *White*, 18 R. I. 659.

The complainant relies upon a second ground for claiming that the money belonged to his intestate, viz.: that the respondent could not have been the owner of it.    Upon this point all his evidence comes from parties who are hostile to

this respondent and interested adversely to her in the result of this suit. They go to great lengths in disparaging the character and pecuniary standing of the respondent's family ; but it appears, not only from the statements of the respondent and her family, who may be supposed to have a friendly interest in her cause—though one of them, her brother, is adversely interested as an heir at law—but also from others who are absolutely disinterested, that her family were in comfortable circumstances, her father occupying a position of responsibility, earning good wages, her mother and herself industrious and frugal. And it is admitted that the mother, in 1875, long before these loans were made, had inherited one legacy of $666 and another of $35, to which the father testifies he added from the proceeds of his business the sum of $800 and his wages, while working for others, of $20 a week.

It is not incredible that, with these sums as a nucleus, the family saved and accumulated enough to make the first loans in question, which were in part re-invested in the loans made later.

But if we examine critically the evidence that the intestate was a man of large property, we find very little ground for believing that he was much better off than the respondent's family.

Reynolds, his son-in-law, says he gave the daughters the money which purchased the three lots in Cranston. This is evidently hearsay. Mrs. Reynolds herself was a witness, but does not refer to the subject.

He had at one time deposits in the Franklin Institution for Savings of $865.96 in the joint names of himself and each of his three daughters, on which dividends were drawn out from September 25, 1877, to June 7, 1893, as the affairs of the bank were liquidated.

He had also a deposit in the Rhode Island Institution for Savings of $450, May, 1874, as trustee for Julia A. Adams, Emma J. Blaisdell, and Louisa B. Reynolds. This was partly drawn out in liquidation. Whether the money in the savings banks belonged to him or to his daughters is quite uncertain,

and it may be that some of the money was used to purchase the Cranston lots.

Mr. Lynch testifies that when the intestate came to work for him he " had an idea " that Braman had $6,000 or $7,000 ; but he gives no particulars, and there is no evidence as to the investment of any portion of such an amount, except in the savings banks, which we have referred to. Not a witness of his own knowledge has testified that James W. Braman ever had any particular piece of property in his own name or pretends to say where he obtained any property originally. He worked for years as a clerk in a real estate broker's office for a compensation not mentioned and which was not regularly paid. Lynch himself says that the mortgage given by Elcy D. Lynch was partly for wages due Braman.

It is quite as difficult, on the evidence, to guess where Braman got the money to make these loans as to credit the story of the respondent. Furthermore, if it were established that the money for which these mortgages were made belonged to Braman, it appears that he took every precaution which a prudent man could to insure his granddaughter's title to it as a gift. He assured every one of the parties to whom these loans were made, except Lynch, that the money belonged to her. He took pains that she should pay out these loans with her own hands, and that she should personally receive the interest as it accrued. He allowed her to pay the taxes herself. So far as appears, he never required her to convey or transfer any of these securities, but recognized her ownership, and made no adverse claim so long as he lived. His conduct in all these affairs was that of a near relative who advises and superintends the investments of a young woman who has some property, and he evidently intended that it should be so interpreted. If the funds were given by him, he concealed, as far as he could, all evidence of that fact. About a year before he died he was critically ill, and, notwithstanding this warning, he made no will after his recovery, and died, apparently, content that the property should remain in the possession of his favorite grandchild.

All the circumstances of his conduct indicate an intention that she should hold as owner.

As to the real estate, the complainant's case is no stronger. The two lots on the Plain Farm plat, according to Reynolds, were purchased by Braman's money in the name of his two daughters, Mrs. Reynolds, and Mrs. Blaisdell. As we observed above, the testimony is only hearsay; but, if true, there can be no resulting trust to the father from this transaction. The law supposes that the father intended to make a gift of the lots by way of advancement. Both of them came to the respondent by deeds from the mother and aunt, who thus owned them in their own rights. For the one conveyed by Mrs. Reynolds, the respondent gave in exchange a lot in East Providence. Why should she have paid value if the transaction were only a change of trustees? For ten years, 1889 to 1899, the respondent paid taxes on these un-occupied lots out of her own money.

The four lots on the Boston and Newport road, in Pawtucket, Nos. 353, 361, 362, and 372, were mortgaged to respondent by Amanda Towle, and when the interest became in arrears Mrs. Towle conveyed to her the equity of redemption. This is proven by the deeds. Mr. Lynch testifies, page 9, that Braman bought these lots, two by cash, and two by trade. His statement is as positive as any of his other testimony, and is equally reliable. There is no evidence, outside of Lynch, that the intestate ever had anything to do with these lots.

The lots in East Providence, Nos. 11, 12, and 13 on River View plat, the deed shows were conveyed by her mother to the respondent in 1889. Mr. Lynch says he knows Mr. Braman bought this property from a lady in Worcester, and took the deed in defendant's name.

In spite of this evidence, we are constrained to credit the deed of the land from William H. and Emma J. Blaisdell, which was witnessed by Lynch, and acknowledged before him as notary public. As it came to the respondent from the daughter of the intestate, if the intestate's money originally paid for it, of which there is no evidence but Lynch's, the pre-

sumption is that the conveyance to the mother was a gift from her father, to which no resulting trust attaches, and so the title of the respondent is good.

The only claim under the third issue relates to profits or collections received by the respondent from the loans and estates already considered. As we have found that these properties belonged to the respondent, the claim must be denied.

The bill is dismissed with costs for the respondent.

*E. S. Hopkins*, for complainant.

*T. F. I. McDonnell*, for respondent.