ARMANDO CAMPANELLA *vs.* IDA CAMPANELLA.

AUGUST 11, 1949.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CAPOTOSTO, J. This is a bill of complaint under general laws 1938, chapter 586, §2, for partition of certain real estate in the city of Providence. The respondent filed an answer in the nature of a cross bill praying that the complainant be declared a trustee of his title, right and interest in said real estate in favor of the respondent. Therefore the cause, which was heard in the superior court on bill, answer, replication and proof, though nominally for partition is in reality controlled by the law of trusts. The complainant has appealed to this court from a decree granting the prayer of the answer in the nature of a cross bill.

The parties are husband and wife. They were married September 23, 1920 and at the time of trial they had three children, Archie, 26, Armando, Jr., 21, and Dorothy, 19 years of age respectively. The husband was a mechanic and sign painter and his wife worked in factories and mills. She took charge of the family earnings and all expenditures were made with money from a common fund. What amount each person, including the two boys in later years, contributed weekly or from time to time to such a fund is the subject of highly conflicting evidence. In 1943 the elder Campanellas bought a home on Dora street in the city of Providence

for $4250, paying $1500 in cash and the balance by mortgage. The deed, dated April 22, 1943, is to Armando Campanella and wife Ida Campanella "as Joint Tenants and not as Tenants in Common." This deed contains no condition upon which the parties, as between themselves, shall hold the particular estate thereby created.

When this cause was on hearing the parties were involved in divorce proceedings brought by the wife. Repeated reference to matters more properly connected with those proceedings tended to obscure the real issue in the instant cause, which issue fundamentally was to determine whether the deed expressed the real intent and purpose of the grantees therein named, as between themselves, *at the time* of the transaction in 1943. The two main grounds relied upon by the respondent in resisting partition were: first, that her own accumulated earnings alone were used in buying the house; and, secondly, that she allowed the deed to run to herself and husband as joint tenants on the express condition that he would stay at home more than he had done in the past.

In view of respondent's contentions we have carefully examined the evidence and will quote therefrom with some liberality in the course of our opinion. It would serve no useful purpose, however, to refer specifically to the evidence relating to the contributions to the family fund by the complainant and the respondent, as their respective testimony covers a long period of years and consists mainly of affirmations and denials as to how much each contributed to that fund, making it impossible to ascertain whose earnings it actually represented. The complainant in substance testified that during his whole married life he turned over practically his entire pay to his wife with the understanding that she was to administer the fund created by pooling the earnings of all members of the family for household expenses, personal needs, education of the children and savings. In contradiction of that testimony the respondent testified that up to about 1942 the complainant

never gave her more than $8 or $10 a week; that with this money and other sums that she received from her father, brother and the boys, when they began to work, she paid all household and other family expenses, including the purchase of an automobile; and that, although the respondent had given her $30 a week for about two years next preceding 1943, all savings which she had deposited in a bank in her own name or kept in the house represented an accumulation of her earnings alone.

At the time of the hearing the father was dead and the brother did not testify. The only other witness for the respondent was her son Archie, but his testimony was mainly of a negative character, that is, that he did not see his father give any money to his mother. One cannot read all the evidence on the point under consideration without entertaining a strong feeling that the testimony of the complainant and the respondent is exaggerated, leaving to speculation whose earnings actually went to make up the family savings.

Turning to the evidence concerning the purchase of the property the complainant testified that family relations at that time were harmonious; that he and his wife went to see the house together and that when they decided to buy it he gave a binder of $50 in the presence of his wife from his money to the seller, who gave a receipt in complainant's name; and that with her knowledge and consent he made all arrangements for the mortgage and for the preparation of the deed by the title company. When the representative of the title company saw that the receipt was in complainant's name, he asked him in whose name or names the deed was to be drawn, and according to his testimony the latter answered that the deed was to be to him and his wife as joint tenants. He further testified that on the day set for completing the transaction he met the wife at the title company and she then made no objection to the form of the deed and also without objection signed the mortgage and note based upon that deed.

The respondent on the other hand testified that it never was her intention to give her husband a half interest in the property; that the relations between them were "No good"; and that he had not been speaking to her "for a couple of years." Yet on hearing that the house was for sale she asked him to go with her to see it, which he did, and "so finally he made up his mind that he liked this house and he consented to my idea and he said 'all right.' And I put $50 down, which Mr. Ridgewell [the seller] put in his name," meaning the receipt for the binder in that sum. On being asked in cross-examination why she gave her husband the $50 to give to the seller as a binder if she alone was to own the property, she answered: "He was my husband and I respected him," and again that she would "do anything to keep him home. * * * I thought that would change his whole life, buying a piece of property."

There is no evidence in the record before us that the respondent ever told the complainant that the deed to the house was to be in her name alone, and she further admitted that when the transaction was closed at the office of the title company she knew the deed was in both names as joint tenants and that she allowed it to remain so without objection. The real import of her testimony as to why she permitted the deed to remain in their joint names is illustrated by the following quotations. In direct examination she testified that after reading the deed and noting that it ran to her and her husband as joint tenants she said: " 'Well, the poor fellow, he's going to do all right * * * I'll give him another chance' and I let it go at that, but it didn't succeed." Whether such intention was expressed to or in the presence and hearing of her husband, or whether it was merely a mental attitude undisclosed to anyone is not clear in this part of her testimony. In cross-examination she further testified on this point as follows: "Q. If you intended this property to be yours alone can you tell us why you did not insist on the deed being made out in your

name alone? * * * A. I told you before *I thought* if he had his name on the property he would stay home. Q. So that you intended at that time that the property should be yours and your husband's? A. Yes." (italics ours)

The trial justice rested his decision for the respondent on the ground that the deed represented a conveyance to the complainant of a one-half interest in the property "under a condition which was known to him, and which he accepted at the time. He has not complied with it." The condition upon which he apparently relied was that the complainant should stay home, whereas he left about a year after the purchase of the house. From such a premise he concluded that the respondent was entitled to relief "whether you call it a resulting trust or whether you call it a failure of consideration."

The question at issue in this cause is to be determined from the circumstances surrounding the parties when the deed and mortgage were executed in 1943, unaffected by subsequent matters that properly belong in the divorce proceedings, if and when that case is heard. We have purposely refrained from referring to such matters, whether they appear in the evidence or in the decision, so that neither party may be prejudiced in those proceedings by any statement from us.

Our examination of the transcript has failed to disclose any pertinent evidence that would support either ground upon which the trial justice based his decision. The evidence that we have set out speaks for itself. A resulting trust arises by operation of law the instant the estate passes. It is well settled that no resulting trust arises where a person furnishes only a part of the purchase price of property unless his part is contributed in payment of some definite aliquot part thereof. A general contribution to a fund is not sufficient to cause a resulting trust to arise in favor of the contributor. *Gooding* v. *Broadway Baptist Church,* 46 R. I. 106. Furthermore, to prove a resulting trust by reason of the payment by one person

of the whole or part of the purchase price of property conveyed to another person, especially if the relationship between them is that of husband and wife, the evidence must be clear and convincing. *Robinson* v. *Robinson,* 66 R. I. 321; *Larocque* v. *Larocque,* 74 R. I. 72, and cases cited.

When the evidence relating to the manner in which the Campanellas dealt with their respective earnings and those of the boys prior to 1943 is fairly considered, and disregarding their marital difficulties in later years, it is clear to us that the earnings of all were deemed the source of a common fund; that the aggregate of whatever contribution each made to that fund was administered by the respondent for household and other expenses; and that if any balance remained after expenditures such balance continued as a common fund or savings of the Campanellas whether that money was deposited in a bank in the sole name of the respondent or continued undeposited in her possession and control.

As we have already stated it is impossible to determine from the evidence in the record before us what part of the earnings of the complainant or of the respondent went into savings, but it is clear that the savings which were used in the purchase of the property in question did not come solely from respondent's earnings. The money thus used came from a common fund which was the result of indeterminable amounts from the earnings of both. Applying the principles of law hereinbefore mentioned, a resulting trust in favor of the respondent could not arise in such circumstances.

The second ground upon which the trial justice rested his decision was failure of consideration. The theory underlying that conclusion apparently was that the cash payment in the purchase of the house represented savings from the earnings of the respondent alone; and, further, that when she saw that the deed was in the names of herself and husband as joint tenants she consented to accept it upon the express condition, communicated to and therefore

knowingly accepted by her husband, that he could retain such joint interest in the property only so long as he would stay home.

We have found no evidence that would ·support the conclusion of the trial justice on this point. The testimony of the respondent herself, as shown ·by the portion thereof hereinbefore quoted, denies that conclusion. Whatever may have been her *undisclosed* intention, she nevertheless knowingly and voluntarily accepted a deed running to herself and husband as joint tenants without remonstrance to anyone, and she further allowed him to assume a mortgage obligation as a joint tenant of the property in accordance with the deed. What the trial justice construed to be a condition binding the complainant was at best merely an unexpressed hope or expectation on the part of the respondent that in the future her husband would comply with her wishes in certain respects if he were a joint tenant of the property. In the circumstances of record the finding that there was a failure of consideration was based on a misconception of material evidence and therefore the decision of the trial justice was clearly wrong.

The complainant's appeal is sustained, the decree appealed from is reversed, and the cause is remanded to the superior court for further proceedings on the bill of complaint.

*Knauer & Knauer, Kirshenbaum & Kirshenbaum,* for complainant.

*Joseph Mainelli,* for respondent.