Frederick CARROZZA, Sr., et al.

v.

Michael VOCCOLA, in his capacity
as Executor for the Estate of
Frederick Carrozza, Jr., et al.

No. 2007–359–Appeal.

Supreme Court of Rhode Island.

Jan. 15, 2009.

James Moretti, for Plaintiffs.

Alan Baron, Washington, DC, for Defendants.

Present: WILLIAMS, C.J., GOLDBERG, SUTTELL, and ROBINSON, JJ.

## OPINION

Chief Justice WILLIAMS, for the Court.

The plaintiffs, Frederick Carrozza, Sr. (Frederick, Sr.), Phillip Carrozza, Freida Carrozza, and Laurie Carrozza–Conn (collectively plaintiffs) appeal from the Superior Court's grant of a motion for summary judgment in favor of the defendants, Michael Voccola, in his capacity as executor of the Estate of Frederick Carrozza, Jr., Angela Giguere, and Christine Giguere–Carrozza (collectively defendants). Frederick, Sr. also appeals the Superior Court's grant of a motion for partial summary judgment in favor of the defendants in a companion case, consolidated for purposes of this appeal.

## I

### Facts and Travel

This case involves four disputed properties titled in the name of the late Frederick Carrozza, Jr. (Frederick, Jr.). For most of his life, Frederick, Jr. worked in the business and real estate ventures of his father, Frederick, Sr. From 1983 to 1996, Frederick, Jr. acquired the four properties, the disposition of which is the focus of the instant appeal.

The four properties at issue are: (1) 103–111 Bellevue Avenue and (2) an adjacent parking lot on Prospect Hill Street in Newport; (3) 47 River Farm Condominium, West Warwick; and (4) 1101 Post Road, Warwick. Frederick, Sr. testified at deposition that he either contributed part of the purchase price of these properties or, as in the case of the River Farm Condominium unit, received it as repayment for money owed to him by a third party. However, he did not provide documentary evidence—such as copies of checks, evidence of cash withdrawals, wire transfers, or of any loan agreements—to corroborate his testimony. Yet, he testified that his intent was that Frederick, Jr. would retain these properties in trust for the benefit of the Carrozza family. Despite this alleged

intent, and against the advice of legal counsel, no written trust agreement ever was executed.

In 1997, Frederick, Jr. made what turned out to be a poor stock investment of a substantial sum of money. To recover his losses, he sold real estate titled in his name and located on Broadway in Newport. Because this sale was done without the permission of Frederick, Sr., it apparently caused a rift between father and son. The two became estranged, resulting in Frederick, Sr.'s drafting of four quitclaim deeds to recover the four disputed properties from his son—deeds the latter never executed.

The father and son's estrangement was never resolved during the remaining life of Frederick, Jr., who died of cancer in 2002. Before his death, however, Frederick, Jr. married and thereafter adopted his wife's daughter, bequeathing to them upon his death the four properties at issue.

On November 15, 2002, Frederick, Sr. (later to be joined by his three remaining children) brought suit against the estate of Frederick, Jr. and his heirs, seeking, *inter alia*, the imposition of a resulting trust on the four properties (the 2002 case). The plaintiffs contended that Frederick, Sr. had purchased the four disputed properties and titled them in the name of Frederick, Jr. so that the latter could hold these properties in trust for the benefit of the Carrozza family. The defendants moved for summary judgment; and, on August 4, 2006, the Superior Court granted defendant's motion in a written decision, effectively dismissing plaintiffs' claim seeking

to impose a resulting trust on the properties.[1]

Before the motion justice's decision, Frederick, Sr. filed a second action in the Superior Court against the same defendants again alleging, *inter alia*, the existence of a trust arrangement concerning the four disputed properties (the 2003 case).[2] The defendants filed a motion for partial summary judgment on plaintiff's claim of a resulting trust, arguing that the prior pending action doctrine barred the identical claim. On March 16, 2007, a second motion justice granted defendants' motion for partial summary judgment, holding, in a written decision, that plaintiffs' claim seeking the imposition of a resulting trust was barred by the doctrine of *res judicata* because of the first motion justice's ruling on the issue.

When the second motion justice granted defendants' motion for partial summary judgment, no judgment yet had been entered encompassing the first motion justice's decision granting summary judgment in the 2002 case. It was not until May 7, 2007, that separate judgments were entered with respect to the decisions of both motion justices, under Rule 54(b) of the Superior Court Rules of Civil Procedure.

The plaintiffs timely appealed both cases, which we ordered consolidated for purposes of this appeal.

## II

### Analysis

On appeal, plaintiffs argue that the first motion justice improperly granted defen-

---

1. The motion justice also granted summary judgment in favor of defendants on plaintiffs' claim that a partnership existed among Frederick Carrozza, Sr. (Frederick, Sr.), Frederick Carrozza, Jr. (Frederick, Jr.), and Phillip Carrozza. The plaintiffs, however, have not addressed this issue on appeal.

2. Frederick, Sr. brought this second action to challenge the disallowance of several claims made by him against Frederick, Jr.'s estate.

dants' motion for summary judgment in the 2002 case because a genuine issue of material fact exists about whether a resulting trust arose concerning the four properties. Secondly, Frederick, Sr. asserts that the second motion justice erroneously applied the doctrine of *res judicata* when granting defendants' motion for partial summary judgment in the 2003 case because a judgment had not yet been entered in the first action.

## A

### Resulting Trusts, the 2002 Case

#### 1

### Standard of Review

"This Court reviews the granting of summary judgment *de novo* and applies the same standards as the motion justice." *McAdam v. Grzelczyk*, 911 A.2d 255, 259 (R.I.2006) (quoting *Andreoni v. Ainsworth*, 898 A.2d 1240, 1241 (R.I.2006)). "Summary judgment is appropriate when no genuine issue of material fact is evident from 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' and the motion justice finds that the moving party is entitled to prevail as a matter of law." *Smiler v. Napolitano*, 911 A.2d 1035, 1038 (R.I.2006) (quoting Super. R. Civ. P. 56(c)). Additionally, the party opposing a summary-judgment motion "has an affirmative duty to submit evidence that demonstrates a genuine issue of material fact." *McAdam*, 911 A.2d at 259.

#### 2

### Resulting Trusts

The type of resulting trust in which plaintiffs allege the four disputed properties are held is known more specifically as a "purchase money resulting trust." George T. Bogert, *Trusts* § 74 at 266 (6th ed. 1987). Such a trust is "intent enforcing"; that is, it may be implied in fact without the existence of an express agreement, written or otherwise, and may be proved by parol evidence. *See id.* at 267; *see also Cetenich v. Fuvich*, 41 R.I. 107, 116, 102 A. 817, 821 (1918). The evidence, however, must be clear and convincing and demonstrate that at "the instant the estate passe[d]," *Campanella v. Campanella*, 76 R.I. 47, 52, 68 A.2d 85, 88 (1949), a contributor of the price for the purchase of property intended that another party, who took actual title to the property, hold it in trust for the benefit of the contributor. *Cutroneo v. Cutroneo*, 81 R.I. 55, 59, 98 A.2d 921, 923 (1953). There is a rebuttable presumption that a claimant's contribution of the purchase price is a gift when "the consideration moves from a parent or one who stands *in loco parentis* to the nominal purchaser * * *." *Reynolds v. Blaisdell*, 23 R.I. 16, 19, 49 A. 42, 43 (1901).

"[A] mere general contribution toward the purchase price by itself will not establish such a resulting trust." *Cutroneo*, 81 R.I. at 59, 98 A.2d at 923. Moreover, we consistently have held that when a claimant contributes only a portion of the purchase price, no resulting trust arises unless it is proven by clear and convincing evidence that it was the contributor's intention, at the time of conveyance, to correspond that partial payment with a beneficial ownership of some "definite fractional part" of the subject property. *Id.*; *Campanella*, 76 R.I. at 52, 68 A.2d at 88; *see O'Donnell v. White*, 18 R.I. 659, 660, 29 A. 769, 770 (1894) ("[W]here one furnishes only part of the amount paid * * * no trust results to any one who pays the residue, unless, * * * 'the part of the purchase money paid by him in whose favor the resulting trust is sought to be enforced * * * [is] shown to have been

paid for some specific part or distinct interest in the estate' * * *.") (quoting *McGowan v. McGowan*, 80 Mass. (14 Gray) 119, 121 (1859)).

### a

### 103–111 Bellevue Avenue, Newport and 1101 Post Road, Warwick

■ Although the Bellevue Avenue and Post Road properties were conveyed to Frederick, Jr., Frederick, Sr. testified that he had contributed part of the purchase price for both properties. For the Post Road property, which was conveyed to Frederick, Jr. in 1990 by Robert Ronzio, Frederick, Sr. testified that he had contributed $25,000 toward the total cost. Concerning the Bellevue Avenue property, Frederick, Sr. gave conflicting accounts about how that property was acquired. First, he claimed to have given Frederick, Jr. $60,000 toward the purchase price. He later testified that in 1986, his sister, at his direction, gave Frederick, Jr. a mortgage to purchase the property.

■ To establish a resulting trust through part payment, the evidence must demonstrate that, at the time of conveyance, Frederick, Sr. intended to retain an interest in some "definite fractional part" of the property. *Cutroneo*, 81 R.I. at 59, 98 A.2d at 923. Here, even considering the evidence in the light most favorable to the nonmoving party, there is an absence of any evidence that Frederick, Sr. intended to retain a specific share of either property. Moreover, "a mere general contribution toward the purchase price" does not establish a resulting trust. *Id.* Thus, the motion justice appropriately granted summary judgment with respect to both the Bellevue Avenue and Post Road properties.

### b

### Prospect Hill Street, Newport

■ Summary judgment also was granted appropriately with respect to the Prospect Hill Street property, a parking lot abutting the Bellevue Avenue property, because, by Frederick, Sr.'s own admission, he had contributed nothing to the purchase price. At deposition, Frederick, Sr. testified that his son had stated that he wanted to buy the Prospect Hill property and, referring to proceeds from rental properties the two owned, Frederick, Sr. responded, "Go ahead, buy it. You've got the money." Thus it is undisputed that Frederick, Sr. supplied no money toward the purchase price, a threshold requirement in the finding of a resulting trust. *See Cetenich*, 41 R.I. at 116, 102 A. at 821.

### c

### 47 River Farm Condominium, West Warwick

■ Frederick, Sr. testified at deposition that the developer of the River Farm Condominium property had borrowed money from him and thus agreed to convey a condominium unit as loan repayment. Frederick, Sr. further testified that because Frederick, Jr. was looking to buy a house at the time, he had offered his son the unit. The father also testified that he had mentioned to his son that if he did not take the property it instead would be offered to Frederick, Sr.'s daughter. But Frederick, Jr. accepted the unit, and it was titled in his name.

We conclude that the evidence presented allows no reasonable inference that Frederick, Sr. intended to retain a beneficial interest in the River Farm Condominium unit at the time of conveyance. *See Cutroneo*, 81 R.I. at 59, 98 A.2d at 923. Rather than rebutting the presumption that such a conveyance was a gift from

father to son, Frederick, Sr.'s testimony—that he otherwise would have given the unit to his daughter—only reinforces that presumption. *See Reynolds,* 23 R.I. at 19, 49 A. at 43. There being no dispute of material fact, we affirm the ruling of the motion justice.

## B

### *Res Judicata,* **the 2003 Case**

■ Frederick, Sr. argues that the second motion justice improperly applied the doctrine of *res judicata* when granting defendants' motion for partial summary judgment in the 2003 case, wherein he also sought the imposition of a resulting trust on the disputed properties. Specifically, Frederick, Sr. argues that because a judgment had not yet been entered for the previous motion justice's decision on the identical cause of action in the 2002 case, there was no "finality of judgment"—an element required in finding that an issue is barred by the doctrine of *res judicata.*

■ *Res judicata,* or claim preclusion, prohibits the "relitigation of all issues that were tried or might have been tried in the original suit," *E.W. Audet & Sons, Inc. v. Fireman's Fund Insurance Co. of Newark, New Jersey,* 635 A.2d 1181, 1186 (R.I. 1994), serving "as an absolute bar to a second cause of action where there exists identity of the parties, identity of issues, and finality of judgment in an earlier action." *Palazzo v. Alves,* 944 A.2d 144, 152 (R.I.2008) (quoting *Gaudreau v. Blasbalg,* 618 A.2d 1272, 1275 (R.I.1993)).

Here, there is no dispute that both cases share identity of parties and the identical issue of the imposition of a resulting trust on the same four properties. The question, however, concerns finality of judgment: whether the second motion justice

properly granted summary judgment after the first motion justice rendered a decision, but before a judgment was entered in the Superior Court.

Procedurally, the defendants' motion for partial summary judgment should not have been granted on the grounds of *res judicata* until a judgment was entered with respect to the 2002 case. However, having held that the first motion justice's granting of summary judgment on the plaintiffs' claim for a resulting trust was proper, it would be an unnecessary expenditure of the resources of both the judiciary and the parties and an unnecessary delay of the disposition of these cases if we reversed the second motion justice and remanded the 2003 case, only to have her properly find, once again, that the action is barred by the doctrine of *res judicata.* To remedy any infirmity, which appears only of a clerical nature, we first will affirm the second motion justice's decision. And, although we also affirm on the merits the first motion justice's decision, we remand the 2002 case; vacate the judgment on the defendants' motion for summary judgment in that case; and direct entry of a new judgment, *nunc pro tunc,* to the time period before the second motion justice's decision. *See Brenner Associates, Inc. v. Rousseau,* 537 A.2d 120, 122 (R.I.1988) (affirming the motion justice on the merits, but remanding the case for entry of judgment *nunc pro tunc* because final judgment had not been entered before the appeal).

## Conclusion

For the foregoing reasons, we affirm the first motion justice's ruling, granting the defendants' motion for summary judgment in the 2002 case, but we vacate the corresponding judgment, and remand the

case for entry of a new judgment encompassing that decision, to be entered *nunc pro tunc* to a time before the second motion justice's decision. We affirm the second motion justice's judgment granting the defendants' motion for partial summary judgment in the 2003 case.

Justice FLAHERTY did not participate.