Joan M. CASSIDAY Plaintiff,

v.

GREENHORNE & O'MARA,
INC. Defendant.

No. CIV.A. PJM 01–2150.

United States District Court,
D. Maryland.

Aug. 6, 2002.

Joan M. Cassiday, Accokeek, MD, for Plaintiff.

Traci Burch, Esquire, Roger D. Meade, Esquire, Baltimore, MD, for Defendant.

## OPINION

MESSITTE, District Judge.

Joan Cassiday sues her former employer, Greenhorne & O'Mara ("Greenhorne"), alleging discrimination in the workplace on the basis of age and sex in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (ADEA) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Greenhorne has filed a Motion for Summary Judgment, to which Cassiday has responded. Greenhorne has submitted a reply. The Court deems a hearing unnecessary, *see* Local Rule 105.6 (D.Md.2001), and will GRANT Greenhorne's Motion.

I.

Greenhorne terminated Cassiday, an at-will employee, in August 1999 after twenty years of employment. She claims to have been a continuous victim of age and sex discrimination at the hands of her employer throughout her tenure up to the 1999 termination. Specifically, Cassiday contends that Greenhorne passed her over for a promotion to manager of the payroll department and for training on new payroll technology, forcing her to rely on older, less efficient software to do her job. She also alleges that Greenhorne opted to train and to promote individuals much younger and less experienced than she. She claims that this amounted to a violation of her rights under the ADEA and Title VII and that in consequence she suffered mental anguish and distress.

At the time of her termination, Greenhorne requested that, in exchange for ten weeks of severance pay, Cassiday signed an agreement waiving her right to file any discrimination or mistreatment claim.[1]

---

1. The waiver provision read as follows:

The Employee waives his right to (a) file any charge or complaint on his own behalf,

Cassiday was given approximately one month to review the document. The parties agree that Cassiday not only consulted her husband before signing it, but also discussed its potential ramifications with an attorney. However, when Cassiday's attorney contacted Greenhorne to request her personnel file and Defendant's employment policies, Greenhorne refused. Greenhorne indicated that any subsequent communication pertaining to the waiver would have to come directly from Cassiday, not her lawyer. Finally, when Cassiday's attorney requested of Greenhorne an additional month to review the offer, his request was denied.

Cassiday characterizes Greenhorne's presentation of the waiver as an ultimatum as to which she effectively had no choice. She alleges that, as her family's source of income and as guardian of her grandchildren, she had to sign the waiver despite incomplete knowledge of its terms. She says that Greenhorne's refusal to communicate with her attorney added to the pressure upon her to sign. In sum, Cassiday claims that the waiver was executed under duress, and as such, is invalid. Because both the ADEA and Title VII require "knowing and voluntary" execution of waivers, she claims eligibility to bring this suit for relief under Title VII and the ADEA.

Greenhorne does not dispute Cassiday's assertions. Rather, it suggests that her allegations do not present a genuine issue of material fact with regard to the validity or the knowing and voluntary nature, hence the validity of the waiver. Greenhorne seeks summary judgment.

## II.

Summary judgment will be granted to the moving party when there exists "no genuine issue as to any material fact, and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Reviewing the facts in a light favorable to the non-movant, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Conclusory allegations based on subjective beliefs and conjecture, do not create a genuine issue of material fact, *see Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985), nor do mere speculation or "the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985). The non-movant cannot merely rest on the general allegations of her pleadings but must take affirmative steps to demonstrate a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## III.

### A.

A knowing and voluntary waiver will preclude a party from suing under the ADEA.[2] *See* 29 U.S.C. § 626(f); *Adams v. Moore Bus. Forms, Inc.*, 224 F.3d 324, 328

---

(b) to in any way volunteer to assist any individual or entity in commencing or prosecuting any action or proceeding including, but not limited to, any administrative agency claims, charges, or complaint and/or any lawsuit against the Employer, or to in any way voluntarily participate or cooperate in any such action or proceeding and/or (c) to participate in any charge or complaint which may be made by any other person or organization on his behalf before any federal, state, or local court or administrative agency against the Employer, which also includes other employees, former employees, agents and/or former of the Employer, except as such waiver is prohibited by law. Should any such charge or complaint be filed whether Employer participates or not, the Employee agrees that Employee will not accept any relief or recovery therefrom.

**2.** In its Motion, Greenhorne urges the Court to evaluate the validity of the waiver under

(4th Cir.2000). The Older Workers Benefit Protection Act of the ADEA, 29 U.S.C. § 626(f)(i) (OWBPA), provides that a waiver will be considered knowing and voluntary if it meets certain stringent requirements. 29 U.S.C. § 626(f)(i); *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 426–27, 118 S.Ct. 838, 139 L.Ed.2d 849 (1998). Specifically, it requires that waiver must be written in a manner understandable by the employee, § 626(f)(i)(A); must refer to claims arising under the ADEA, § 626(f)(i)(B); must not abrogate claims that arise after the waiver's execution, § 626(f)(i)(C); must be supported by consideration, § 626(f)(i)(D); must advise the employee to consult with an attorney, § 626(f)(i)(E); must give the employee twenty-one days to consider the agree-

ment, § 626(f)(i)(F); and must provide at least seven days after execution for the employee to revoke its terms, § 626(f)(i)(G). *Adams*, 224 F.3d at 328. If a waiver given as part of a settlement agreement fails to satisfy these guidelines, it will be deemed invalid and the employer will remain subject to suit on the ADEA claims. *Oubre*, 522 U.S. at 428, 118 S.Ct. 838.

■ The record indicates that the waiver in the settlement agreement offered to Cassiday meets all the OWBPA's criteria for a valid ADEA waiver:

(1) the language used in the agreement is clear and understandable;

(2) the agreement specifically refers to Cassiday's rights under the ADEA and a multitude of other protective laws; [3]

---

the same standard as to both the ADEA and Title VII claims. The Court finds this inappropriate. Under the ADEA, a waiver of rights must meet specific enumerated criteria to be "knowing and voluntary." 29 U.S.C. § 626(f)(i). As discussed infra, under Title VII, a court must look to "the totality of the circumstances" to determine whether the waiver is "knowing and voluntary." *See, e.g., Tung v. Texaco Inc.*, 150 F.3d 206, 208–09 (2d Cir.1998) (elaborating the distinction between the ADEA and Title VII standards of review). The Court will therefore review the ADEA and Title VII waiver questions independently.

3. The relevant clause of the Agreement reads:

The Employee knowingly and voluntarily releases and forever discharges the Employer of and from any and all claims known and unknown, which, against the Employer, the Employee, his heirs, executors, administrators, successors, and assigned (referred to collectively throughout this Settlement Agreement and General Release as the Employee) have or may have or arise out of events as of the date of execution of this Settlement Agreement and General Release including, but not limited to, any alleged violation of:

a) The National Labor Relations Act, as amended;

b) Title VII of the Civil Rights Act of 1964, as amended;

c) The Civil Rights Act of 1991, as amended;

d) Sections 1981 through 1988 of Title 42 of the United States Code;

e) The Employee Retirement Income Security Act of 1974, as amended;

f) The Family and Medical Leave Act of 1993;

g) The Immigration Reform Control Act, as amended;

h) The Americans with Disabilities Act of 1990, as amended;

i) The Age Discrimination in Employment Act of 1967, as amended;

j) The Fair Labor Standards Act, as amended;

k) The Occupational Safety and Health Act, as amended;

l) The Maryland Fair Employment Practices Act, as amended;

m) The Maryland Wage Payment Laws, as amended;

n) The Equal Pay Law for Maryland, as amended;

o) Any other federal, state, or local civil or human rights law, or any other local, state or federal law, regulation or ordinance;

p) Any public policy, contract, tort, or common law;

q) Any allegation for costs, fees or other expenses, including attorney's fees, incurred in these matters;

(3) it does not require her to prospectively relinquish her right to sue for claims that arise after execution;

(4) it provides for consideration in the form of ten weeks of severance pay;

(5) it advises her to consult an attorney;

(6) it gives her twenty-one days to review the agreement; and

(7) it gives her seven days following execution to revoke its terms.

Ostensibly, the waiver complies with the OWBPA and appears to preclude Cassiday's claims.

Cassiday, nevertheless, argues that financial exigencies and the custody of her grandchildren forced her to sign the document and that she was under duress. The Court considers this argument.

■■ The Court accepts that, despite a waiver's compliance with the OWBPA's guidelines, it will not be deemed knowingly and voluntarily executed if the employee was under duress or otherwise intimidated into signing by the employer. *Bennett v. Coors Brewing Co.*, 189 F.3d 1221, 1229 (10th Cir.1999); *see* S.Rep. No. 263, at 31–32 (1990), *reprinted in* 1990 U.S.C.C.A.N. 1509, 1537 (noting that when Congress passed the OWBPA, it intended courts to scrutinize the "complete circumstances" under which ADEA waivers are signed to look for instances in which fraud, duress, or mistake impacted the employee's waiver of rights). However, both law and policy suggest that one's personal economic burdens resulting from the loss of a job,

should not constitute "duress" for the purpose of invalidating a termination release. *Melanson v. Browning–Ferris Indus.*, 281 F.3d 272, 277 (1st Cir.2002) (noting in a Title VII case, that permitting such claims would "make it virtually impossible for employers and employees to enter into binding settlements of employment disputes occasioned by job losses, lay-offs, and the like"). As in *Melanson,* Cassiday's claim of duress derives solely from her supposed financial problems complicated by the prospective loss of her job. She does not allege that Greenhorne physically threatened her or otherwise misled or duped her into signing. At all times she remained free to reject the offer and pursue her legal remedies.

■■ But Cassiday contends that Greenhorne's refusal to communicate with her attorney compounded her duress, invalidating the ADEA waiver. The Court disagrees. While the Court has found no cases directly on the point,[4] it may be noted that the statute itself contains no such requirement. To be valid, a waiver need only advise the employee that she should consult an attorney; it does not mandate that the *employer* consult with the employee's attorney. *See* 29 U.S.C. § 626(f)(i)(E). While the Court considers the "complete circumstances" of a waiver's execution, *Bennett,* 189 F.3d at 1229; S.Rep. No. 263, at 31–32, the "complete circumstances" in the present case in no sense establish the requisite degree of du-

The Employee understands that this is a General Release intended to release the Employer from any and all claims of whatever kind or nature the Employee had, may have, or could have prior to the date of the execution of this Settlement Agreement and General Release.

4. Some authority, however, may be gleaned from the Maryland Rules of Professional Conduct for attorneys. Under the rules, a lawyer is forbidden from having discussions with a

person who he knows is represented by another lawyer in regard to the subject of the discussions. Maryland Rules of Professional Conduct Rule 4.2 (1987). This rule, however, solely governs the relationship between counsel and opposing respective clients; it "does not (and could not in any event) prevent one party from directly communicating with another." Geoffrey C. Hazard and W. William Hodes, The Law of Lawyering § 38.4 (3d ed.2002).

ress. Not only did Cassiday review the waiver over a one-month period, so did her husband and her attorney. That her attorney may have been denied access to particular files, or was not able to serve as Cassiday's primary contact with Greenhorne, or was not given an additional month to consider the proposal may have been hard bargaining on Greenhorne's part. But these actions were not inconsistent with the letter of the law. Finally, lest there be any doubt about the matter, the very last section of the agreement, set out just a few inches above Cassiday's signature, says in all capital letters:

BY SIGNING THIS SETTLEMENT AGREEMENT AND GENERAL RELEASE, THE EMPLOYEE STATES THAT:

A. SHE HAS READ IT;

B. THE UNDERSTANDS IT; AND KNOWS SHE IS GIVING UP IMPORTANT RIGHTS;

C. SHE AGREES WITH EVERYTHING IN IT;

D. IF THE EMPLOYEE CONSULTED AN ATTORNEY, HIS [SIC] ATTORNEY NEGOTIATED THIS SETTLEMENT AGREEMENT AND GENERAL RELEASE WITH HER [SIC] KNOWLEDGE AND CONSENT;

E. SHE HAS BEEN ADVISED TO CONSULT WITH HIS [SIC] ATTORNEY PRIOR TO EXECUTING THIS SETTLEMENT AGREEMENT AND GENERAL RELEASE;

F. SHE HAS SIGNED THIS SETTLEMENT AGREEMENT AND GENERAL RELEASE KNOWINGLY AND VOLUNTARILY.[5]

Cassiday knowingly and voluntarily signed the waiver agreement. Her ADEA claims are therefore barred.

**B.**

■ Greenhorne also asserts that Cassiday knowingly and voluntarily agreed to give up her rights under Title VII. *See Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 51, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). Courts review the validity of a Title VII waiver under a "totality of the circumstances" standard. *Melanson,* 281 F.3d at 276. This standard has been held to comprehend (1) the employee's education and business experience; (2) the respective roles of the employer and employee in determining the terms and conditions of the waiver; (3) the clarity of the agreement; (4) the time the employee had to study the agreement; (5) whether the employee had the advice of counsel; (6) whether the employer encouraged the employee to seek the advice of counsel and whether the employee had sufficient time to do so; and (7) the waiver's consideration. *Id.* at 276 n. 4; *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 438 (2d Cir.1998). This list of factors is non-exclusive and no single factor is a *sine qua non. Melanson,* 281 F.3d at 276.

■ As with the ADEA claim, the totality of the circumstances clearly indicates that Cassiday knowingly and voluntarily waived her Title VII rights. While the record does not reflect Cassiday's educational experience, the fact is that her tenure at Greenhorne lasted nearly twenty years, more than sufficient time for her to absorb considerable business experience. And, although Cassiday did not negotiate the terms of the waiver, nothing indicates that she was precluded from seeking to do so. The agreement itself is written in non-complex, straightforward language and is a total of but three pages in length. Cassiday had ample time, approximately one month, to study the document, during which time she consulted her husband and an attorney. Indeed, Greenhorne express-

---

**5.** Despite the confusion of genders in the pro-      vision, its import remains clear enough.

ly encouraged Cassiday to consult with a lawyer with regard to the agreement. The waiver was supported by sufficient consideration, *viz.* ten weeks' severance pay. And, finally, as just indicated, Cassiday expressly affirmed that she was·signing the agreement knowingly and voluntarily. The totality of these circumstances leads ineluctably to the conclusion that Cassiday's signature on the document was placed knowingly or voluntarily. Consequently her Title VII claim is barred.

The Court will GRANT Defendant's Motion for Summary Judgment.

A separate Order will be entered.

### FINAL ORDER

For the reasons set forth in the accompanying Opinion, it is this 6 day of August, 2002 ORDERED:

1) Defendant's Motion for Summary Judgment is **GRANTED**;

2) Final Judgment is **ENTERED IN FAVOR** of Defendant Greenhorne·& O'Mara, Inc. and **AGAINST** Plaintiff Joan Cassiday.

3) The Clerk shall **CLOSE** this case.