Theresa YOUNG

v.

**WARWICK ROLLERMAGIC SKATING CENTER, INC., et al.**

No. 2008–111–Appeal.

Supreme Court of Rhode Island.

June 30, 2009.

Timothy J. Robenhymer, Esq., for Plaintiff.

Barbara Harris, Esq., Providence, for Defendant.

Present: GOLDBERG, Acting C.J., FLAHERTY, SUTTELL, ROBINSON, JJ., and WILLIAMS, C.J. (ret.).

**O P I N I O N**

Justice ROBINSON for the Court.

Theresa Young (plaintiff), appeals to this Court from the Superior Court's grant of summary judgment in favor of the defendants, Warwick Rollermagic Skating Center, Inc. and John Durnye (defendants).

We are called upon in this case to decide whether a particular written release agreement is all-encompassing or, as plaintiff contends, is rather more narrow in scope. For the reasons set forth in this opinion, it is our view that the release at issue does indeed clearly constitute a waiver by plaintiff of her right to pursue *all* claims and demands that she might have had against the entities and persons referenced in the release document at the time that she signed it. Accordingly, it is our opinion that summary judgment was properly granted.

This case came before this Court on January 27, 2009, pursuant to an order directing the parties to appear and show cause as to why the issues raised in this appeal should not be summarily decided. Having considered the record, the legal memoranda filed by the parties, and the oral arguments, we are of the opinion that cause has not been shown and that this case should be decided without further briefing or argument. For the reasons set forth herein, we deny the appeal and affirm the judgment of the Superior Court.

**Facts[1] and Travel**

The plaintiff in this case was formerly the general manager of Warwick Rollermagic Skating Center. She sustained a work-related injury on July 11, 1996, when she was struck by a patron's automobile in the parking lot of the roller skating rink. She suffered a shoulder injury and was out of work for a time as a result of this accident. Within a short period of time following the accident, she resumed her duties as a manager working—on average, fifty hours every week until her employment was terminated in June of 2000.[2]

After sustaining the above-referenced injury, plaintiff filed a workers' compensation claim in the Rhode Island Workers' Compensation Court, which claim was still pending at the time her employment was terminated. After her termination, she filed a charge of discrimination with the Rhode Island Commission for Human Rights on March 26, 2001; she alleged that the termination of her employment was the result of unlawful discrimination against her because of her physical handi-

1. The facts set forth in this opinion have been adduced from the hearing on defendant's motion for summary judgment and from the record submitted to this Court.

2. As a result of her work-related injury, in April of 1999 plaintiff underwent a surgical procedure on her shoulder and was out of work for some time following the surgery.

cap.[3]

On March 27, 2002, plaintiff settled her workers' compensation claim; and, as part and parcel of that settlement, she signed a broadly worded release as well as a resignation from employment.[4] The release was signed by plaintiff in the presence of a notary public; the document that was signed was entitled, "RELEASE AND SETTLEMENT OF CLAIM." The text of that document reads in its entirety as follows:

"KNOW ALL MEN BY THESE PRESENTS, that the undersigned THERESA YOUNG, (the employee), being of full age, for the sole consideration of $38,038.00 to be paid by or on behalf of ROLLERMAGIC ROLLER RINKS, its insurer(s), and their successors, assigns and companion companies, the receipt whereof is hereby acknowledged, do hereby release, acquit and forever discharge said party or parties, and all persons, firms or corporations liable by, through or under the above-named, from all claims and demands, actions and causes of action, damages, costs, loss of service, expenses and compensation or claims for dependency benefits, medical benefits, mental injury, specific compensation, loss of use, and/or disfigurement, and property damages, on account of, or *in any way growing out of any personal injuries*, whether known or unknown to me at the present time resulting or to result from *any and all incidents or injuries occurring during my employment*, more especially an occurrence(s) whereby I sustained a work-related injury(s), which injury(s) and occurrence(s) are described in a certain Petition for Commutation of the employee that relates to this Release, which Petition has or will be filed with the Rhode Island Workers' Compensation Court, and do hereby covenant to indemnify and save harmless said parties released hereby from and against all claims and demands whatsoever on account of, or any way growing out of said occurrence(s) and injury(s), or their results, both to the person and property.

It is further agreed that this Release expresses a full and complete settlement of a liability claimed and denied, regardless of the adequacy of the aforesaid payments made, and that said payment and acceptance of this Release shall not operate as an estoppel, waiver or bar with respect to any claim the party or parties released may have against the employee." (Emphasis added.)

Several months later, in September of 2002, plaintiff commenced an action against defendants in the Superior Court for Kent County, alleging violations of the following anti-discrimination statutes: the Civil Rights Act of 1990, G.L. 1956 chapter 112 of title 42; the State Fair Employment Practices Act, G.L. 1956 chapter 5 of title 28; and the Civil Rights of People with Disabilities Act, G.L. 1956 chapter 87 of title 42.[5] The plaintiff filed an amended complaint with the Superior Court on October 8, 2002, which raised substantially identical claims. In due course, defendants filed a motion for summary judgment requesting that summary judgment

---

**3.** It is clear from the record that the disability which constitutes the nucleus of plaintiff's disability discrimination claim is the work-related shoulder injury that she sustained on July 11, 1996.

**4.** At the time of her March 27, 2002 settlement, plaintiff's physical handicap discrimination charge was still pending before the Rhode Island Commission for Human Rights.

**5.** The plaintiff filed her Superior Court action after having been granted the required "right to sue" by the Rhode Island Commission for Human Rights on July 5, 2002.

be entered in their favor and that plaintiff's complaint be dismissed; a hearing on that motion was held on March 26, 2007.

At the hearing on their motion for summary judgment, defendants argued that plaintiff's complaint should be dismissed on the following grounds: (1) that she had resigned from her employment; (2) that she had executed a release of her claims; and (3) that she had not established a *prima facie* case that she was an individual with a disability under either the State Fair Employment Practices Act or the Rhode Island Civil Rights Act. At the hearing, plaintiff argued that the March 27, 2002 release related *only* to the workers' compensation case and did not relate to her discrimination claims.

The hearing justice ruled that the language of the release was "global" and "all encompassing," and she further stated that the release was "signed with particular knowledge that there was a pending claim that wasn't specifically exempted from the broad language of the release." Accordingly, the hearing justice determined that plaintiff's physical handicap discrimination action was not exempt from the effect of the release, and she granted defendants' motion for summary judgment.

An order granting defendants' motion for summary judgment was entered on April 2, 2007, and judgment was entered on the same day. The plaintiff filed a timely notice of appeal.

On appeal, plaintiff argues that the release did not apply to her employment discrimination claims because her workers' compensation claim was separate and distinct from those claims and that, therefore, the language in the release should be read as applying only to her workers' compensation claim and not as barring her discrimination claims. The plaintiff contends that the March 27, 2002 release is ambiguous because it does not explicitly refer to her physical handicap discrimination claim despite the fact that the discrimination claim was pending at the time that the release was signed. On that basis, plaintiff contends that, pursuant to this Court's decision in *Aetna Casualty & Surety Co. v. Farr,* 594 A.2d 379 (R.I.1991), her discrimination claims are not barred by the terms of the above-quoted release.

## Standard of Review

■ It is true that summary judgment is "an extreme remedy that warrants cautious application." *Gardner v. Baird,* 871 A.2d 949, 952 (R.I.2005). Nevertheless, Rule 56 of the Superior Court Rules of Civil Procedure constitutes a procedural device that, in the proper circumstances, plays an appropriate role in separating the wheat from the chaff in the litigation process.

■ When this Court reviews the granting of a motion for summary judgment, it does so in a *de novo* manner, and it applies the same standards as did the motion justice. *Planned Environments Management Corp. v. Robert,* 966 A.2d 117, 121 (R.I.2009); *Carrozza v. Voccola,* 962 A.2d 73, 76 (R.I.2009); *Estate of Giuliano v. Giuliano,* 949 A.2d 386, 391 (R.I.2008).

■ In conducting such a review, this Court must "review the evidence in the light most favorable to the nonmoving party." *See, e.g., Cullen v. Lincoln Town Council,* 960 A.2d 246, 248 (R.I.2008). And the party who opposes the motion "carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions." *Accent Store Design, Inc. v. Marathon House, Inc.,* 674 A.2d 1223, 1225 (R.I.1996); *see also Carrozza,* 962 A.2d at 76; *McAdam v. Grzelczyk,* 911 A.2d 255, 259 (R.I.2006).

Once having conducted the review referred to in the previous paragraph, we will affirm the grant of summary judgment "if there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Lynch v. Spirit Rent–A–Car, Inc.*, 965 A.2d 417, 424 (R.I.2009); *see also Carlson v. Town of Smithfield*, 723 A.2d 1129, 1131 (R.I.1999) (holding that the granting of summary judgment pursuant to Rule 56 will be upheld "when a review of the admissible evidence viewed in the light most favorable to the nonmoving party reveals no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law").

## Analysis

### I. The Controlling Legal Principles

■ A release is a contractual agreement, and the various principles of the law of contracts govern the judicial approach to a controversy concerning the meaning of a particular release. *See Lennon v. MacGregor*, 423 A.2d 820, 822 (R.I.1980); *see also Julian v. Zayre Corp.*, 120 R.I. 494, 498, 388 A.2d 813, 815 (1978); *Ratzlaff v. Seven Bar Flying Service, Inc.*, 98 N.M. 159, 646 P.2d 586, 589 (Ct.App.1982) ("Releases, being contractual in nature, are governed by the laws of contracts generally * * *.").

■ Whether a particular contract is or is not ambiguous is a question of law. *Gorman v. Gorman*, 883 A.2d 732, 738 n. 8 (R.I.2005) ("It is a fundamental principle of contract law that the existence of ambiguity *vel non* in a contract is an issue of law to be determined by the court."); *see also Merrimack Mutual Fire Insurance Co. v. Dufault*, 958 A.2d 620, 625 (R.I.2008); *National Refrigeration, Inc. v. Standen Contracting Co.*, 942 A.2d 968, 971 (R.I.2008); *Rotelli v. Catanzaro*, 686 A.2d 91, 94 (R.I. 1996) ("Whether the terms of a contract are clear and unambiguous is itself a question of law * * *.").[6] Accordingly, a trial court's ruling as to that issue is reviewed by this Court on a *de novo* basis. *Zarrella v. Minnesota Mutual Life Insurance Co.*, 824 A.2d 1249, 1259 (R.I.2003) ("[T]his Court reviews the trial justice's interpretation of contracts *de novo.*").

■ When a contract is determined to be clear and unambiguous, then "the meaning of its terms constitute a question of law for the court * * *." *Cassidy v. Springfield Life Insurance Co.*, 106 R.I. 615, 619, 262 A.2d 378, 380 (1970); *see also Clark–Fitzpatrick, Inc./Franki Foundation Co. v. Gill*, 652 A.2d 440, 443 (R.I. 1994).[7]

■ In determining whether or not a particular contract is ambiguous, the court should read the contract "in its entirety, giving words their plain, ordinary, and usual meaning." *Mallane v. Holyoke Mutual Insurance Company in Salem*, 658 A.2d 18, 20 (R.I.1995); *see Cerilli v. Newport Offshore, Ltd.*, 612 A.2d 35, 37–38 (R.I.1992) ("Unless plain and unambiguous

---

6. A contract is ambiguous when it is "reasonably susceptible of different constructions." *Westinghouse Broadcasting Co. v. Dial Media, Inc.*, 122 R.I. 571, 579, 410 A.2d 986, 991 (1980); *see also Dubis v. East Greenwich Fire District*, 754 A.2d 98, 100 (R.I.2000); *Flynn v. Flynn*, 615 A.2d 119, 121 (R.I.1992). As we explain in the next section of this opinion, we do not view the language of the release at issue as being "reasonably susceptible of different constructions."

7. By contrast, when there is ambiguity in the contractual language, then construction of the terms becomes an issue of fact. *Cassidy v. Springfield Life Insurance Co.*, 106 R.I. 615, 619, 262 A.2d 378, 380 (1970); *see Dubis*, 754 A.2d at 100; *Judd Realty, Inc. v. Tedesco*, 400 A.2d 952, 955 (R.I.1979); *Fryzel v. Domestic Credit Corp.*, 120 R.I. 92, 98, 385 A.2d 663, 666 (1978).

intent to the contrary is manifested, words used in contract language are assigned their ordinary meaning."). And, while carrying out this task, the court should "refrain from engaging in mental gymnastics or from stretching the imagination to read ambiguity * * * where none is present." *Mallane*, 658 A.2d at 20; *see also Lynch*, 965 A.2d at 425; *Aetna Casualty & Surety Co. v. Sullivan*, 633 A.2d 684, 686 (R.I. 1993); *Mullins v. Federal Dairy Co.*, 568 A.2d 759, 762 (R.I.1990); *McGowan v. Connecticut General Life Insurance Co.*, 110 R.I. 17, 19, 289 A.2d 428, 429 (1972).

## II. The Application of Those Controlling Principles

 In our judgment, the language of the notarized release document at issue in this case is unambiguous. We are struck by the sweeping and comprehensive nature of the language that the release document contains. It is replete with such straightforward English words as "any" and "all."[8] We are quite unable to read the document other than as an all-encompassing release, whereby plaintiff released, acquitted, and forever discharged defendants from *"all* claims and demands, actions and causes of action * * * on account of, or in *any* way growing out of *any* personal injuries * * *

resulting or to result from *any* and *all* incidents or injuries occurring during my employment * * *." (Emphasis added.)

The phrase "in any way growing out of any personal injuries" which we have italicized in the release document that we quoted in the Facts and Travel section of this opinion is of special significance. It is clear to us that plaintiff's physical handicap discrimination claim came into being *as a result of* the personal injury that she sustained at the workplace; in other words, the physical handicap discrimination claim came into being *as a result of* the workplace injury.[9]

 In view of our conclusion as to the unambiguous nature of the release language, there is no reason not to accept the release document and apply it at face value.[10] *See Gorman*, 883 A.2d at 739 n. 11 ("Under established contract law principles, when there is an unambiguous contract and no proof of duress or the like, the terms of the contract are to be applied as written."); *see also Rivera v. Gagnon*, 847 A.2d 280, 284 (R.I.2004) ("If the contract terms are clear and unambiguous, judicial construction is at an end for the terms will be applied as written."); *Zarrella*, 824 A.2d at 1259 ("If the terms are found to be unambiguous, * * * the task

8. We are not linguistically naive. We recognize that there are occasions when apparently straightforward words like "any" and "all" can, in a particular context, have a less unequivocal and more nuanced meaning. *See, e.g., Raso v. Wall*, 884 A.2d 391, 395 (R.I. 2005) (construing statutory language providing that an application for postconviction relief "may be filed at any time" as meaning that such an application may be filed "at any *reasonable* time."). In the instant situation, however, we are convinced that the words "any" and "all" as used in the release document admit of nothing less than a straightforward meaning.

9. It should be borne in mind that it was on March 26, 2001 that appellant filed with the

Rhode Island Commission for Human Rights her charge of discrimination on the basis of physical handicap. It is therefore clear that, when she signed the release approximately one year later (*viz.*, on March 27, 2002), plaintiff was aware that said claim was still pending.

10. Since we consider the language of the release to be unambiguous, we are not confronted with a situation in which we need resort to the *contra proferentem* rule. *See Judd Realty, Inc. v. Tedesco*, 400 A.2d 952, 955 (R.I.1979) ("[I]t is only where contract terms are ambiguous that they are construed against the drafter.").

of judicial construction is at an end and the parties are bound by the plain and ordinary meaning of the terms of the contract."); *Clark–Fitzpatrick/Franki Foundation Co.*, 652 A.2d at 443 ("In situations in which the language of a contractual agreement is plain and unambiguous, its meaning should be determined without reference to extrinsic facts or aids.").

We acknowledge the fact that Ms. Young does not consider the release agreement to have the clear meaning that we believe it has. While we respect plaintiff's right to assert her position, the mere fact that parties differ as to the meaning of an agreement does not necessarily mean that the agreement is in fact ambiguous. *See City Investing Company Liquidating Trust v. Continental Casualty Co.*, 624 A.2d 1191, 1198 (Del.1993) ("[T]he language of an agreement * * * is not rendered ambiguous simply because the parties in litigation differ concerning its meaning."). When, as in this case, we are confronted with unambiguous contractual words, what is claimed to have been the subjective *intent* of the parties is of no moment. *Vincent Co. v. First National Supermarkets, Inc.*, 683 A.2d 361, 363 (R.I. 1996) ("When a contract is unambiguous, * * * the intent of the parties becomes irrelevant."); *Westinghouse Broadcasting Co. v. Dial Media, Inc.*, 122 R.I. 571, 581 n. 10, 410 A.2d 986, 991 n. 10 (1980)

("[T]he intent we seek is not some undisclosed intent that may have existed in the minds of the contracting parties but is instead the intent that is expressed in the language of the contract.").[11] It would be difficult to improve upon the articulation by the Supreme Court of Pennsylvania of this crucially important principle of contract law; in the case of *Shovel Transfer and Storage, Inc. v. Pennsylvania Liquor Control Board*, 559 Pa. 56, 739 A.2d 133, 138 (1999), that court wrote as follows:

> "It is firmly settled that the intent of the parties to a written contract is contained in the writing itself. * * * When the words of a contract are clear and unambiguous, the intent is to be found only in the express language of the agreement."

Our ruling today is not at all inconsistent with this Court's holding in *Aetna Casualty & Surety Co. v. Farr*, 594 A.2d 379 (R.I.1991).[12] In that case, Shirley Farr, the defendant in a declaratory judgment action brought by Aetna, had been injured in an automobile accident with an uninsured motorist while she was driving a vehicle that was owned by her employer and insured by Aetna, which company was also the workers' compensation carrier for her employer. Ms. Farr filed a claim for workers' compensation benefits and eventually signed a release in favor of both Aetna and her employer in exchange for the payment to her of $40,000.[13] At the

---

**11.** The dissent's footnote reference to Ms. Young's interrogatory answer regarding her *intent* in signing the release does not give us pause. A court's proper role in interpreting a contract is to divine "the intent that is expressed in the language of the contract." *Westinghouse Broadcasting Co.*, 122 R.I. at 581 n. 10, 410 A.2d at 991 n. 10. It is not properly the role of a court to seek "some undisclosed intent that may have existed in the minds of the contracting parties * * *." *Id.*; *see also Vincent Co. v. First National Supermarkets, Inc.*, 683 A.2d 361, 363 (R.I. 1996).

**12.** Similarly, we do not perceive our holding in this case as being inconsistent with our holding in *Folan v. State Department of Children, Youth, and Families*, 723 A.2d 287 (R.I. 1999). That case dealt with the right of a plaintiff to pursue statutory discrimination claims without being barred by the exclusivity provision of the Workers' Compensation Act; it did not in any way address the scope of the language in a release document.

**13.** We note that the factual scenario present in *Farr*, where the same insurance company was the insurer responsible for handling both Ms. Fair's workers' compensation claim and

time that this release was executed, Aetna was apparently aware that Ms. Farr intended to pursue a claim for uninsured motorist benefits (*id.* at 381); and, after signing the just-referenced release, she did in fact institute an action to recover such benefits. *Id.* at 380.

The release that was signed by the defendant in *Farr* specifically referred to her workers' compensation claim, but it made no mention of an uninsured motorist claim. That release document included language releasing claims "which ha[d] been the subject matter[] of certain proceedings under said Workers' Compensation Act * * *." *Farr*, 594 A.2d at 381. Although the release also contained language that was consistent with a general release, the Court determined that the omission of any reference in the release to Ms. Farr's uninsured motorist claim gave rise to an ambiguity and, as a result, summary judgment was inappropriate.

 Although at first blush there appears to be some commonality between *Farr* and the case at bar, upon sustained analysis it becomes clear that *Farr* is not controlling precedent with respect to the instant case.[14] Unlike the release in *Farr*, the language of the release in the instant case released defendant from "all claims and demands, actions and causes of action, damages * * * on account of, or in any

way growing out of any personal injuries, whether known or unknown to me at the present time * * *." This language is similar to the language contained in the release at issue in *W.P. Associates v. Forcier, Inc.*, 637 A.2d 353 (R.I.1994). In *W.P. Associates*, the agreement released "any and all" obligations relating to certain enumerated events. Although the phrase "promissory note" was not used in the release, this Court held that the promissory note at issue in that case was "clearly referenced and released by the agreement" since it arose from actions taken with respect to certain of the enumerated activities. *Id.* at 355, 357. Similarly, the language in the release document at issue in this case applies to both Ms. Young's discrimination claims and her workers' compensation claim since both arose from the injury that she incurred on July 11, 1996.

We can perceive no reason for invalidating the instant release or its all-encompassing scope. *See generally, Guglielmi v. Rhode Island Trust Financial Corp.*, 573 A.2d 687, 689 (R.I.1990) (discussing the factors to be considered when the validity of a release is at issue). That being so, we must respect the instant release as we would any other contractual agreement that has been properly entered into. In the words of one distinguished jurist:

---

her claim for uninsured motorist benefits, is not present in the instant case.

14. We take this opportunity to clarify (if clarification be necessary) that our holding in *Aetna Casualty & Surety Co. v. Farr*, 594 A.2d 379 (R.I.1991), should not be construed as creating a total bar that would prevent the enforcement of language in a release document that is consistent with a general release when specific claims are also referenced in the document. The mere presence of language in a release that is consistent with a general release and that also includes a release of specific claims does not create ambiguity in a *per se* manner. To extend *Farr* in such a way

would, for all intents and purposes, eliminate the effectiveness of general release language. Such a result is not compelled by our precedents and would certainly not be in keeping with this Court's constant insistence that, whenever possible, the settlement of disputes should be encouraged. *See, e.g., Ryan v. Roman Catholic Bishop of Providence*, 941 A.2d 174, 186 (R.I.2008) (noting that it is "very much an important part of the policy of the courts of Rhode Island (and courts in general) to encourage the amicable settlement of disputes" and citing numerous authorities in support of that proposition).

"Were it otherwise, signed contracts would be little more than scraps of paper, subject to the selective recollection of the parties in interest." *D'Antuono v. CCH Computax Systems, Inc.*, 570 F.Supp. 708, 714 (D.R.I.1983) (Selya, J.).

## Conclusion

For the reasons set forth in this opinion, the judgment of the Superior Court is affirmed, the plaintiff's appeal is dismissed, and the papers in this case may be remanded to the Superior Court.

Justice FLAHERTY, dissenting.

I most respectfully, but nonetheless vigorously dissent from the majority's holding in this case. In my view, there is no question that under the principles set forth in *Aetna Casualty & Surety Co. v. Farr*, 594 A.2d 379 (R.I.1991) and *Ritter v. Mantissa Investment Corp.*, 864 A.2d 601 (R.I. 2005), the release signed by the plaintiff is ambiguous. I respectfully disagree with the majority's efforts to make its opinion in this case consistent with this Court's holding in *Farr*. Therefore, it is my opinion that under our well-settled law, this case was not amenable to resolution by summary judgment, and the judgment of the Superior Court should be vacated. *See Ritter*, 864 A.2d at 607 (a dispute about intent creates a genuine issue of material fact that may not be decided in a motion for summary judgment).

In affirming the Superior Court, the majority is impressed with the "sweeping and comprehensive nature of the language that the release document contains." However, the majority simply overlooks the references to the specific claim set forth in that document.[15] It was those references to a specific claim, laid side by side with similarly sweeping language concerning "all claims and demands," that were the very reason that this Court determined that there existed an ambiguity in both *Farr* and *Ritter*.

In light of the majority's interpretation of *Farr*, this Court's decision in that case deserves review. In *Farr*, 594 A.2d at 379–80, the defendant was injured in an automobile accident with an uninsured motorist while she was driving a vehicle that was owned by her employer and insured by Aetna. Aetna also had provided her employer with a workers' compensation insurance policy that afforded coverage to Farr. *Id.* at 380. After the accident, Farr filed a claim for workers' compensation benefits and later signed a release in connection with the settlement of that claim in exchange for $40,000 from Aetna and her employer. *Id.* After signing the release, Farr instituted an action to recover uninsured-motorist benefits under the Aetna automobile liability policy. *Id.* Aetna filed an action seeking declaratory relief and later, a motion for summary judgment, arguing that, by signing the release in the workers' compensation claim, Farr had released Aetna from all causes of action arising out of the automobile accident, including her claim for uninsured-motorist coverage. *Id.* at 380–81. This Court examined the release and held that it was ambiguous, reasoning that although some language in the release was consistent with a general release, "the document specifically refer[red] only to the workers' compensation claim" and that it made no mention of the uninsured-motorist claim. *Id.* at 381. The Court considered it to be

**15.** The specific claim released is set forth as follows: "an occurrence(s) whereby I sustained a work-related injury(s), which injury(s) and occurrence(s) are described in a certain Petition for Commutation of the employee *that relates to this Release,* which Petition has or will be filed with the Rhode Island Workers' Compensation Court." (Emphasis added.)

significant that Aetna was aware of Farr's intention to file an uninsured-motorist claim at the time that her workers' compensation claim was pending. *Id.* This Court concluded, therefore, that "[a]mbiguity may be inferred from this omission." *Id.* The Court said that, "[b]ecause of the inclusion in the release of this specific language relating to workers' compensation and the exclusion of any such specific reference to uninsured-motorist claims, the effect of the release is unclear." *Id.*[16] Therefore, the Court held that the ambiguity created a question requiring a factual determination about the intent of the parties that was inappropriate for resolution on a motion for summary judgment. *Id.*

In *Ritter*, this Court recently applied the holding in *Farr* to a release signed by a plaintiff-wife in connection with a divorce property settlement. *Ritter*, 864 A.2d at 607–08. In that case, the defendant-ex-husband filed a motion for summary judgment seeking to dismiss the plaintiff's suit alleging ownership in a former marital residence known as "the Nunnery." *Id.* at 603. In that case, we reversed the trial court's finding that a previous divorce proceeding and related separation agreement barred the plaintiff's claims to the specific property. *Id.* During the divorce settlement, the wife had signed a mutual release in which each party released all claims to property of the other spouse and released each from "any and all claims of every nature." *Id.* at 608. It was significant, however, that the property settlement agreement listed specific properties, but did not address the ownership of the Nunnery. *Id.* This Court ruled that even in

the face of broad language in a release that is consistent with a general release, a release nonetheless may be ambiguous. *Id.* Applying this principle, we held that the agreement was ambiguous on the question of whether it barred the ex-wife's claim to the Nunnery because the agreement referred to the divorce specifically and it did not contain any reference to ownership of the Nunnery. *Id.* As a result, this Court decided that a factual dispute as to the parties' intent precluded entry of summary judgment. *Id.*

After a comparison of Young's release with the release executed in *Farr*, it is immediately apparent that they are strikingly similar, especially in the manner in which the language of each alternates between wording that is global and general in nature and language that is focused on a specific workers' compensation claim. In *Farr*, the release stated, in pertinent part, that Farr released the payors from,

> "any and all manner of actions, * * * claims and demands, both in law and equity, and under the Workers' Compensation Act of the State of Rhode Island * * * but especially those claims arising out of a certain loss as a result of the happening which occurred on August 12, 1983 * * *, which has been the subject matters [*sic*] of certain proceedings under said Workers' Compensation Act." *Farr*, 594 A.2d at 381.

Here, similar to *Farr*, Young's release includes,

> "all claims and demands * * * in any way growing out of any personal injuries, * * * resulting or to result from any and all incidents or injuries occur-

---

**16.** In *W.P. Associates v. Forcier, Inc.*, 637 A.2d 353 (R.I.1994), this Court reiterated this principle. We explained that "[t]he release in *Farr* specifically delineated only those claims 'which ha[d] been the subject matter * * * of certain proceedings under said Workers'

Compensation Act.' * * * Thus, the omission of any reference to an uninsured motorist claim created an ambiguity." *W.P. Associates*, 637 A.2d at 356–57 (quoting *Aetna Casualty & Surety Co. v. Farr*, 594 A.2d 379, 381 (R.I.1991)).

ring during my employment, more especially an occurrence(s) whereby I sustained a work-related injury(s), which injury(s) and occurrence(s) are described in a certain Petition for Commutation of the employee that relates to this Release, which Petition has or will be filed with the Rhode Island Workers' Compensation Court."

The situation of the parties and circumstances existing at the time the release was signed also are markedly similar to *Farr*. Aetna knew about Fair's uninsured motorist claim because it was pending at the time she signed the release, even though no suit or demand for arbitration had been initiated, *Farr*, 594 A.2d at 381, and here, Young's employer and its carrier both were aware of her claim before the Human Rights Commission, although she had yet to file her employee discrimination claim in the Superior Court.

The majority opinion appears to ignore this Court's precedent that "ambiguity may be inferred from the omission of an explicit reference to a claim in a release." *W.P. Associates v. Forcier, Inc.*, 637 A.2d 353, 356 (R.I.1994) (citing *Farr*, 594 A.2d at 381).[17] When the Court decided *Farr* and reiterated the same principles in *Rit-*

ter, it rejected the argument that a release containing broad language must be construed as a general release. Furthermore, reading such weight into the words "all claims and demands" and "any" without context contravenes our well-settled rules for interpreting contracts. "In determining whether an agreement is clear and unambiguous, the document must be *viewed in its entirety* and its language be given its plain, ordinary and usual meaning." *W.P. Associates*, 637 A.2d at 356 (emphasis added). Further, "such language [is] ambiguous if, upon *considering the agreement as a whole*, the language allows for more than one interpretation and, thus, the true intentions of the parties remain uncertain." *Ritter*, 864 A.2d at 607 (emphasis added).[18]

Turning to the release signed by Young, significantly, the document does not expressly reserve application of the broad language before identifying a specific claim. For example, to be clearer, the release may have included such language as, "more especially, without limiting the generality of the foregoing." *McBurney v. Teixeira*, 875 A.2d 439, 443 (R.I.2005). I also consider it significant that Young's release does not even purport to be gener-

**17.** The holding in *W.P. Associates*, is easily distinguished. The release in that case included the discharge of "any and all * * * debts * * * arising out of * * * actions taken * * * in connection with the Condominium Parcel, Improvements, Golf Course Parcel or the operation * * * of the Golf Course." *W.P. Associates*, 637 A.2d at 357. This Court concluded that a promissory note was such a debt, and even though it was not listed in the release, it was discharged by the agreement. *Id.* The Court reasoned that unlike in *Farr*, there were no "specifically delineated" claims, or in that case, debts, that created an ambiguity. *Id.* at 356–57.

**18.** The thrust of the majority's opinion is its concern for encouraging "amicable settlement of disputes." However, there is an

equally compelling concern for employees who unwittingly may waive their prospective civil rights claims. Under federal law, an enforceable release of discrimination claims must be knowing and voluntary, as evidenced by the "totality of the circumstances." *Melanson v. Browning–Ferris Industries, Inc.*, 281 F.3d 272, 276 (1st Cir.2002); *Rivera–Flores v. Bristol–Myers Squibb Caribbean*, 112 F.3d 9, 12 (1st Cir.1997). In this light, I would question the enforceability of this release. In Young's answers to interrogatories, she said that she intended only to settle her workers' compensation claim and that she was told that the document she signed on the same day, entitled "Resignation of Employment," was for the workers' compensation insurance company's purposes only.

al in nature; it lacks the common designation of "general release" or "release of all claims" and is simply entitled in the singular, "Release and Settlement of Claim." A contract's title "is not controlling, but may be considered along with the rest of the language in the document." *780 L.L.C. v. DiPrima*, 9 Neb.App. 333, 611 N.W.2d 637, 644, 644–45 (2000) (holding inconsistency between title of document and signature line of document created contract ambiguity).

Contrary to the majority's position, in my opinion the release is reasonably and clearly susceptible to an interpretation that the release was not intended to bar Young's claims arising under the Rhode Island employment-discrimination statutes and that Young did not intend to waive these claims. Not only does the release omit any reference to a civil rights statute, an employment-discrimination claim, or to her claim that was pending before the Human Rights Commission, the release contains terms that tend to indicate that the payment is being made for the purpose of settling a workers' compensation claim. The release contains terms specific to such claims, including "dependency benefits, medical benefits * * * specific compensation, loss of use, and/or disfigurement." Indeed, by its own terms, the release "relates" to Young's workers' compensation claim described in a "Petition for Commutation" filed, or to be filed, in the Workers' Compensation Court.

Injuries suffered under the Workers' Compensation Act are different from those resulting from employment discrimination. *See Folan v. State*, 723 A.2d 287, 291 (R.I. 1999) (holding exclusivity provision of the Workers' Compensation Act (WCA) does not bar statutory claims created by the Fair Employment Practices Act (FEPA) and the Rhode Island Civil Rights Act (CRA)). Indeed, this Court has acknowl-

edged that the purpose of "anti-discrimination statutes goes well beyond compensating for physical injury or inability to perform employment duties." *Id.* at 292. The FEPA and the CRA focus on "employer conduct that undermines equal opportunity in the workplace" whereas the WCA focuses on "the employee and his or her work-related injury." *Id.* at 290–91 (quoting *Byers v. Labor and Industry Review Commission*, 208 Wis.2d 388, 561 N.W.2d 678, 682 (1997)).

In my opinion, it does not require the application of "mental gymnastics" to conclude that Young's work-related injury is not the same as the denial of rights and loss of opportunity alleged in her disability-discrimination claims. Although her discrimination claims grew out of her employment, specifically her employer's allegedly discriminatory conduct in terminating her employment because of her disability or handicap, they did not grow out of the discrete fact that she suffered an injury to her left shoulder while on the job. Therefore, I perceive ambiguity in whether the terms "personal injuries * * * result[ing] from any and all incidents or injuries occurring during my employment" include Young's disability-discrimination claims.

For these reasons, it is my opinion that the majority's holding in this case is completely inconsistent with our well-established precedent, and further that the majority relies on gossamer-thin rationale in an effort to distinguish this case from our previous holdings. Therefore, I most respectfully dissent from the majority's holding, and I would vacate the judgment of the Superior Court and remand the record in this case to that tribunal.